[S. F. No. 7585. In Bank.—February 18, 1918.]

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY (a Corporation), et al., Appellants, v. E. D. ROBERTS, as Treasurer, etc., Respondent.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY (a Corporation), Appellant, v. E. D. ROBERTS, as Treasurer of the State of California, Respondent.

TAXATION—CONSTITUTIONAL LAW—CONSTRUCTION OF ARTICLE XIII, SECTION 14, SUBDIVISION (B)—APPLICABILITY TO ALL CLASSES OF INSURANCE COMPANIES AND ASSOCIATIONS.—The provision of the constitution of California found in subdivision b of section 14 of article XIII that "every insurance company or association doing business in this state shall annually pay to the state a tax of one and one-half per cent upon the amount of the gross premiums received upon its business done in this state, less return premiums and reinsurance in companies or associations authorized to do business in this state," applies equally to all insurance companies and associa-

tions, whether fire or life, and whether doing business as stock concerns, dividing profits periodically among members regardless of whether such members are also insured in the company or association, or whether doing business as mutual concerns, dividing excess profits periodically among the body of the insured members.

ID.—DEDUCTIONS PERMISSIBLE — "RETURN PREMIUMS" DEFINED.—The term "return premiums" as used in such constitutional provision to designate the deductions which may be made from the gross premiums of insurance companies or associations subject to taxation, is limited to that portion of the gross premiums received by insurance companies or associations, which has been unearned, and which the companies or associations are, for that reason, not lawfully entitled to retain but are lawfully bound to return, and does not extend to that portion of the income in excess of the cost of insurance, which mutual benefit companies or associations are wont to distribute as dividends among their membership.

APPEALS from judgments of the Superior Court of the City and County of San Francisco. James M. Seawell, Judge.

David L. Levy, Walter Shelton, and Campbell, Weaver, Shelton & Levy, for Appellants.

U. S. Webb, Attorney-General, and John W. Stetson, for Respondent.

RICHARDS, J., *pro tem.*—These are appeals from judgments rendered in favor of the defendant. The cases were consolidated upon the trial and upon appeal, being identical as to the legal principles involved. These actions were brought against the defendant as treasurer of the state of California to recover certain taxes paid by each of said plaintiffs under protest, which said taxes it was claimed by each of said plaintiffs had been illegally assessed and levied by the state board of equalization, and illegally collected by the defendant as state treasurer. The plaintiffs are each mutual benefit insurance companies. The particular taxes claimed by them to have been illegally assessed and unlawfully collected were assessed, levied, and collected in pursuance of article XIII, section 14 (subd. b), of the constitution of California as amended in the year 1910, so as to include said subdivision, which reads in part as follows: "Every insurance company or association doing business in this state shall

annually pay to the state a tax of one and one-half per cent
upon the amount of the gross premiums received upon its
business done in this state, less return premiums and reinsur-
ance in companies or associations authorized to do business
in this state.'' The single question involved in these appeals
turns upon the construction to be given to the phrase
''return premiums'' as used in the provision of the con-
stitution above quoted. The contention of the plaintiffs in
both of these cases is that this phrase must be given a con-
struction which will be broad enough to include those sums
which mutual benefit insurance companies annually pay to
their insured membership in the form of what has heretofore
been known as ''dividends'' but which, according to the
plaintiffs' contention, is none other than the excess of
premiums above the actual cost of insurance which has been
prudentially collected from their membership in order to
provide against contingent or possible loss during the year;
and which, not having been needed or used for such purposes,
is returned to them; and hence, under the construction of
this phrase in the subdivision of the constitution under review
for which the plaintiffs contend, is returned premiums, and
as such not subject to taxation. Turning to the subdivision
of the constitution above quoted in which this phrase occurs,
there are several observations regarding its general language
which may serve to clarify this discussion. In the first place
it is to be noted that this provision of the constitution has
for its purpose an increase in the revenues of the state by
the imposition of a tax upon every insurance company or
association doing business within it. It is made to apply
equally to fire insurance companies or associations and to life
insurance companies or associations; and to each of these,
whether the particular insurance company or association,
either fire or life, is doing business as a stock concern, divid-
ing its profits periodically among its members regardless of
whether these are also insured in it, or is doing business as
a mutual concern dividing its excess periodically among the
body of its insured membership. The foregoing considera-
tion is important in determining the construction to be
placed upon the particular clauses of the constitution under
review, since it could not be seriously contended that the
framers of this constitutional amendment had in mind one
definition of the meaning of the clause in question in its

application to one of the foregoing kinds of insurance companies or associations, and quite a different meaning as applied to another. In other words, the interpretation to be put upon this phrase must be one applicable indifferently to each and to all of the general class of institutions subject to this form of taxation. Proceeding from this point, it next becomes important to inquire whether the phrase "return premiums" had taken on a particular or technical significance in relation to any classes of insurance concerns included within the general terms of this amendment prior to the time of its adoption. As to this question there is no dispute among the parties to these proceedings; for it is conceded that in so far as the phrase "return premiums" had relation to fire insurance companies or associations doing business as stock concerns, and also in a more limited degree to life insurance companies or associations of the same character, the phrase "return premiums" had acquired a limited and technical significance not only in this state but generally in the insurance world, which meaning had become so definitely fixed as to have found a place in the law dictionaries and in the recognized text-books upon fire and life insurance. In Black's Law Dictionary the phrase is listed and is defined to mean, "The repayment of the whole or a ratable part of the premium paid for a policy of insurance upon the cancellation of the contract before the time fixed for its expiration." In Bouvier's Law Dictionary the phrase is also found and is similarly defined. In Joyce on Insurance and also in Elliott on Insurance—the two main modern text-books on this branch of the law—there are to be found in each an entire subdivision devoted to the subject of "Return of premiums and assessments," in which these terms are given application to cases wherein the risk has not attached, or where the policy is void, or has been issued through a mistake of law or fact, or has been procured through fraud and the like, and wherein the use of the phrase is limited to the class of cases above enumerated. (Joyce on Insurance, c. 35; Elliott on Insurance, sec. 299; see, also, Dawson's Elements of Life Insurance, p. 166.) Nowhere, in fact, so far as the industry of counsel in the search for precedents has gone, or as our own independent research has extended, had the phrase "return premium" ever been given in the domain of either fire or life insurance,

prior to the enactment of the amendment to our constitution
under review, any other than the limited meaning in which
that phrase has been defined and discussed by the law dic-
tionaries and law-writers above referred to. And to this
statement may be added another and a conceded fact by the
parties herein, which is that the phrase "return premium"
had never, prior to the adoption of the said amendment to
the constitution, been used or employed by mutual benefit
insurance companies or associations anywhere in relation to
the excess in the income of these concerns distributed periodi-
cally among their members. These considerations become all
the more significant when we look to the origin of the phrase
"return premium" in its relation to our California law. As
early as 1862 the legislature passed a statute imposing a tax
upon foreign insurance companies and their agencies doing
business in California. (Cal. Stats. 1862, p. 243.) By the
terms of this act an annual statement was required from the
office or agency of every insurance company to be filed with
the treasurer of the county in which such office or agency
was located, exhibiting the gross amount of premiums col-
lected by each, less the gross amount of "return premiums."
The act further provided for a tax of two per cent on the
amount of gross premiums so reported after deducting
"return premiums" upon all fire, marine, and inland risks,
and a tax of one per cent on the amount of premiums col-
lected from life risks. In 1903 the substance of this early
statute was carried into the Political Code, [Stats. 1903,
p. 359], with the exception that its application was expressly
limited to fire insurance companies. It is to be noted, how-
ever, that the precise language of the present constitutional
amendment is to be found in this section of the Political
Code, thus indicating the source from which the framers
of the amendment derived its phraseology. (Pol. Code, sec.
622a.) This section of the code was amended in 1905, [Stats.
1905, p. 136], and again in 1907, [Stats. 1907, p. 162], but
its phrasing in respect to the point in question remained the
same. In the meantime the Civil Code had been dealing with
the same subject. In the year 1872 article VIII, title XI,
was enacted in that code, in which article occur a number of
sections treating of the subject of return of premiums,
wherein are set forth the several conditions under which a
return of premium may be had and may be enforced by the

insured. These include cases where no part of the interest of the insured in the thing insured is exposed to the perils insured against; or where the policy has been surrendered before its time expires; or where the contract of insurance is voidable for fraud; or where there is an over-insurance by several insurers. (Civ. Code, secs. 2616–2622.) The use of the phrase is thus found to be limited in the Civil Code to practically the same meaning embraced in its definition by the dictionaries and text-writers already referred to. Such was the state of the law, and such was the limited meaning attributed with practical unanimity to the term "return premiums" at the time the amendment to the constitution under review was framed by the legislature and adopted by the people of California. Without doubt its use in defining a certain portion of the gross premiums of insurance companies to be excepted from the taxes imposed by the amendment might have been limited by express terms to life or fire insurance companies or associations doing business as stock concerns, or such meaning might have been in the same manner extended so as to include the cases of income over the cost of insurance which mutual benefit companies or associations are wont to distribute among their membership, but in the absence of such a differentiation we are constrained by rules of interpretation, too well known to require recital, to the giving to the phrase "return premiums," as used generally in this clause of the amendment to the constitution, the one and only meaning which had been universally assigned to it for a long time prior to the date of the adoption of said amendment, and which it bore by general acceptance at that time. Its meaning and application as thus interpreted must be confined to that portion of the premium of all insurance companies or associations affected by the amendment which has, for the reasons above referred to, been unearned, and to the return of which the insured has a right enforceable at law. It is clear that as to such portions of the gross premiums of insurance companies or associations as they are, for the reasons stated, not lawfully entitled to retain, no tax should be levied; and that it is to such portions of their premiums as they are thus lawfully bound to return that the exemption in this constitutional amendment was intended to apply.

It is, however, strenuously and elaborately argued on behalf of the appellants herein that they and each of them come strictly within the class of mutual benefit insurance companies or associations the plan and purpose of which is to furnish insurance to the body of their membership at cost, and not to make a profit out of the business done, nor to accumulate any sum which would be distributable as dividends in the usual and ordinary acceptation of that term; that the amount of premiums periodically collected from their membership is only increased above the bare cost of insurance in order to protect them and their members against such unforeseen contingencies or extraordinary outlays as might arise during any year; and that when these do not occur the excess above the ascertained cost of insurance is returned to their membership under the name or form of dividends, but that it constitutes in fact a return of the excess of premiums collected, and hence should be included in the exemption provided for in the constitution. The argument is specious, and were it founded entirely in fact is one which might well be presented to the legislature or the people in an effort to effect a change in the phraseology of the constitutional amendment under review, but it cannot be availed of to procure from the courts another and different interpretation of a phrase which has been found to have had by universal usage a more restricted meaning at the time it was ingrafted upon the law. Besides, it is by no means conceded by the respondent that the argument is founded in fact; for while it may be admitted that mutual insurance companies or associations are theoretically committed to the policy of providing insurance to their members at cost, and of theoretically returning to them the excess of premiums prudentially collected for the purpose of taking care of unforeseen contingencies, the truth is that the so-called dividends which these institutions periodically distribute among their members, and which we are urged herein to define as "return premiums," do not actually represent the outworking of these theories and are not in fact limited to such excess, and do not, in practical effect, result in a return to the membership of these institutions of the actual excess in premiums above the cost to each of his insurance. According to the evidence presented in these cases, mutual

benefit insurance companies or associations have other sources of income than that of premiums. They derive certain incomes from forfeitures, surrenders and lapses; also from the increase in the value of investments in securities or in lands, and from rents and interest on investments and loans, and from annuities. These are intermingled with premiums received in the general calculations of the earnings of the institution; and out of the funds thus accumulated there are paid the overhead expenses, the sums falling due on policies, the amounts to be set aside as reserve, etc. From this accumulation derived from these various sources is also paid periodically to its members such an amount as the business of the institution justifies, in the form of what, prior to the adoption of the constitutional amendment in question, was known and defined as dividends, but which is now sought to be designated as "return premiums." A consideration of the sources of the funds thus distributed discloses that these cannot, by any refinement of bookkeeping or of reasoning, be made to represent either the actual excess over cost of insurance paid by the membership of these institutions, nor the actual return to each member of his excess of premium over the cost of insurance to him. Aside, therefore, from the conclusion which we have felt impelled to draw as to the meaning of the phrase "return premiums," derived from its previous use, we thus discover that the amounts periodically distributed by these institutions among their membership in the form of dividends cannot be deemed "return premiums" when considered either from the viewpoint of the variety of sources from which they are derived, nor from that of the conceded fact that they do not represent as to each member of the institution the excess of premium over cost of insurance which he has actually paid. In this connection it may be noted, as having a more or less important bearing upon this phase of the discussion, that there is no agreement, either express or implied, between the premium payer and the mutual benefit company or association of which he is a member, to the effect that he shall have insurance at cost, or that he shall have any enforceable right to receive or recover any amount in the form of a return premium or otherwise corresponding to the excess which he has paid in premiums over the cost of insurance. The amount of premium to be paid by each member is fixed by a consideration of the business prin-

ciples governing successful insurance companies or associations whether they are stock or mutual benefit concerns. The premium once paid is gone from its payer forever, unless it can come back to him in the form of dividends or profits upon the business of the institution to which he belongs, and in which business the same principles of prudential management and wise and careful investment prevail, as those regulating insurance of every kind and form. From this viewpoint the fact that the premium payer is or is not also a member, or in that sense a shareholder, in the particular form or class of insurance company or association with which he has chosen to be allied, ceases to be a matter of more than minor consideration. The framers of the constitutional amendment in question drew no distinction between the insurance companies or associations to be affected by the form of taxation it imposes; and evidently, by its general terms, intended that the gross premiums received by all insurance companies or associations indifferently should not be deleted by dividends in the levy of the state tax thereon. It is to be noted in this immediate connection that the state of California is unique among the commonwealths of this country in the phrasing of its laws relative to the imposition of taxes upon insurance companies or associations doing business within it. No other state, save one, has expressly laid its tax upon the gross premiums of such institutions, or has in express terms exempted from the effect of such taxation "return premiums." As a result of this there is a paucity of cases bearing directly or by any close analogy upon the question involved in the present controversy. Counsel for appellants cite a number of cases which it is claimed touch the point at issue here. Their chief reliance is upon the case of *Mutual Benefit Life Ins. Co.* v. *Herold*, 198 Fed. 199. That was a case involving a construction of the Federal Corporation Tax Act (36 Stats. 112, sec. 38; U. S. Comp. Stats., Supp. 1911, p. 946, [U. S. Comp. Stats. (1916 ed.), p. 7280; 4 Fed. Stats. Ann. (2d ed.), p. 255]), by the terms of which a special excise tax was to be levied upon all insurance companies organized under the laws of the United States or of any state or territory "equivalent to one per cent upon the entire net income . . . received within the year from all sources." The action was brought by the plaintiff to recover from the defendant, a collector of internal revenue, certain taxes paid to him under said statute, upon the contention that certain dividends which

it claimed represented an excess of premiums collected from its members, and which were accredited upon the amount of premiums such members were to pay in the succeeding year, were not to be classed as "income received" by the plaintiff so as to be subject to such taxation. The statement of facts in the case assumes that these dividends so applied were in fact merely excess premiums previously collected, a fact not conceded in the instant case, and the decision is predicated upon this assumption; but aside from this, the distinction between that case, and also the other cases which counsel cite as having followed its doctrine, is obvious, consisting, as it does, in the quite different phrasing of the law in each case. We do not regard this line of cases relied upon by the appellants herein as authority for the construction which they would have us place upon the peculiar wording of the constitutional provision here under review. The only other state having a statute with the same wording as that of the California law is the state of New Mexico, which subsequently to the passage of our constitutional amendment embodied its precise language in an act imposing taxes upon insurance companies in that state. In a case arising under said act the supreme court of New Mexico, by a decision of two of its three justices, held that dividends of mutual benefit life insurance companies were to be classed as return premiums and were to be deducted as such from the gross premiums of such companies subject to taxation. (*Life Ins. Co.* v. *Chaves,* 21 N. M. 264, [153 Pac. 303].) This decision is based upon the reasoning of the case of the *Mutual Benefit Life Ins. Co.* v. *Herold, supra,* and makes no reference to the history of the amendment to the California constitution, from which the precise language of the act it assumes to construe was obviously taken. It is sufficient to say that we do not regard this case as controlling or even persuasive authority in the decision of the instant case. It may be said in conclusion that while the authorities upon the general subject of taxation of the incomes or earnings of insurance companies or associations are numerous and are quite conflicting, they depend so largely upon the peculiar wording and differing phraseology of the statutes of the several states, or of the United States, upon this subject, as to render unprofitable an attempt to review or harmonize them here. From what has heretofore been stated, we are of the opinion

that the contentions of the appellants herein as to the construction to be placed upon the amendment to the constitution in question cannot be sustained.

The judgments are affirmed.

Sloss, J., Victor E. Shaw, J., *pro tem.*, and Angellotti, C. J., concurred.

Rehearing denied.