[S. F. No. 10446. In Bank.—November 2, 1923.]

THE MUTUAL BENEFIT LIFE INSURANCE COMPANY OF NEWARK, NEW JERSEY, Respondent, v. FRIEND W. RICHARDSON, Appellant.

[1] LIFE INSURANCE—TAXATION—DIVIDENDS—WHEN NOT TAXABLE.— Where a mutual life insurance company writes insurance on the level premium plan, under which the maximum annual premium throughout the life of the policy is the same and is stipulated in the policy, the insurance being written at cost but the premiums being fixed at a figure which enables the company to allow the policyholders dividends periodically, the company is not taxable, under section 14 of article XII of the constitution adopted in 1910, on

such dividends credited with the consent of the policy-holder on renewal premiums, the policy-holder paying the difference between the stipulated premium and the amount of the dividend.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Raymond Benjamin for Appellant.

David L. Levy and Sapiro, Levy, Hatfield & Hayes for Respondent.

MYERS, J.—This is an appeal by defendant from a judgment in favor of plaintiff in an action to recover certain taxes paid to the state by plaintiff upon the business done by it within this state during the year 1916, under the requirement of section 14, article XIII, of the constitution as adopted in 1910, which provides as follows: "Every insurance company or association doing business in this state shall annually pay to the state a tax of one and one-half per cent upon the amount of the *gross .premiums received* upon its business done in this state, less return premiums and reinsurance in companies or associations authorized to do business in this state; . . . " (Italics added.)

It was proved at the trial and the court found that plaintiff is a mutual company and conducts its business of life insurance on the mutual plan. It has no capital stock and no stockholders, its board of directors being selected by the policy-holders. Plaintiff writes insurance upon the lives of its policy-holders on the level premium plan by virtue of which the maximum annual payment which any member or policy-holder can be called upon to pay is the same throughout the life of the policy and is therein stipulated. Under this plan each policy-holder receives his insurance at cost.

Plaintiff calculates its premium rates upon the following factors:

1st. The adoption of a table of mortality showing the probable death rate for each age of life. Plaintiff uses a table showing an admittedly higher death rate than that

which will probably be realized, with the result that at the end of the year it is found that the demand upon the premium necessary to take care of death losses is less than that contemplated in fixing the amount of the premium.

2d. The adoption by plaintiff of an assumed rate of interest to be realized upon its invested assets during the lifetime of the policy. This assumed rate of interest is in fact lower than that which plaintiff expects to and actually does realize.

3d. The addition to plaintiff's other requirements of a sum, technically known as "loading," for the purpose of meeting the expenses of conducting the business as well as any unforeseen contingencies, such as excessive death losses and unusual investment conditions. The provision for these expenses and contingencies is also greater than experience shows to be required.

Upon the assumed factors above set forth, the level or constant premium rates stipulated in policies of insurance by plaintiff are computed. This is done as a measure of precaution with the knowledge that the premiums so stipulated will be in excess of plaintiff's requirements.

The premiums which plaintiff collected and received during the calendar years 1915 and 1916, respectively, were computed in the manner above set forth.

The plaintiff's policies of insurance, issued on the participating plan, contain; or are subject to the following, provisions:

"Upon payment of the second year's premium, and at the end of the second and of each subsequent Policy year, this policy while in force will be credited with such dividends as may be apportioned by the Directors, and such Annual Dividends will include the portion of the divisible surplus accruing hereon. Dividends thus credited will be paid in cash, or, at the option of the insured, will be applied either in reduction of Premium, or upon the Addition or Accelerative Endowment plan; but if Dividends have been applied upon the Addition plan, subsequent Dividends cannot be applied upon the Accelerative Endowment plan, or *vice versa*. If settlement of this Policy be made in accordance with Privileges No. 2, or No. 3, or No. 4, the stipulated payments under Privilege No. 2 or No. 3, or the Installments certainly payable under Privilege No. 4, will be increased

by such Annual Dividends as may be apportioned by the Directors, but such Dividends will be payable only in cash.

"Under the Addition plan Dividends are applied to the purchase of additional participating Insurance (herein referred to as Dividend Additions) payable with the Policy, such insurance being purchased at the Company's rates therefor published and in force at this date. This policy may be converted into a fully Paid-up Participating Policy payable at the same time as this Policy, subject to any outstanding indebtedness of this Policy whenever the Reserve on such Additional Insurance, together with the Reserve on the original Policy, computed on the basis hereinbefore mentioned, shall equal the Net Single Premium therefor, computed on the same basis.

"Under the Accelerative Endowment plan Dividends are applied to the conversion of the Policy into an Endowment payable at a specified and gradually diminishing age; or, if preferred, into a fully Paid-up Participating Policy payable at the same time that this policy is payable according to its terms."

At the end of the year ending December 31, 1915, plaintiff credited to each policy entitled thereto its rightful share of the divisible surplus arising from the three sources above named, and thereafter during the year 1916 as the premiums fell due plaintiff notified its policy-holders of the amount thereof, and that in accordance with the policy contract, if the policy-holder so elected, plaintiff would maintain the insurance in force for the ensuing year, in return for, and would accept and receive as the renewal premium, the difference between the premium stipulated in the policy and the amount of dividend credited thereto. During the year 1916 numerous policy-holders in California elected to have the stipulated renewal premium thus reduced by, and to obtain insurance for the ensuing year by payment of, such difference. Said policy-holders actually paid such abated premium and no more during said year of 1916, and the total amount of the gross premiums received by plaintiff from its business in California during said year was $661,604.44. Notwithstanding this, the board of equalization added to that amount the sum of $128,393.97, which was the aggregate amount of abatements made as aforesaid. Such abatements were, in fact, portions of premiums paid in previous

years, and found to be unnecessary, and upon which the plaintiff had paid the tax for the year when received. The present action is to recover the taxes paid by plaintiff under protest upon the aggregate amounts of those abatements.

The solution of the question thus presented may perhaps be aided by considering concretely a typical case found in the transcript. One Wallace held a thousand dollar policy with plaintiff, taken out in June, 1915. The first year's premium was $18.80, which he paid plaintiff. On this $18.80 plaintiff paid the tax required by law. In June, 1916, plaintiff found that Wallace was entitled to two dividends aggregating $4.92. Wallace received a notice advising him that his premium of $18.80 would be due June 23, 1916, and that his first year's premium deposit entitled him to receive two "dividends," amounting to $4.92; that in renewing his policy for another year he could apply the $4.92 dividends to the $18.80 premium due; that by allowing the company to keep the dividends due him of $4.92 he could pay the premium of $18.80 for the second year, if, in addition to the $4.92 due him and retained by the company, he sent in $13.88 more. This is what Wallace did. Plaintiff claims that in the second year the gross premium received by it from Wallace was but $13.88. Defendant took the position that the gross premium received by plaintiff from Wallace during the second year was $18.80, made up of the $13.88 paid by Wallace in cash and $4.92 "dividends" retained by the company. Plaintiff brought this action to recover the tax which it was compelled to pay upon the $4.92, which it claims was not received by it during the second year.

[1] The question thus presented is stated by counsel for appellant as follows: "In the second year of Wallace's policy did the company receive a gross premium of $18.80 or $13.88? If they received $18.80 the judgment should be reversed. If they received $13.88 the judgment should be affirmed." This question seems almost to answer itself. Learned counsel on both sides have, with commendable industry and ability, submitted exhaustive briefs herein, wherein are collated and carefully analyzed the various cases from other jurisdictions thought to have some bearing upon the question. But the problem does not appear to us to require a resort to such methods for its solution. If we

assume that Mr. Wallace's policy was issued upon the twenty year payment plan, as was the sample policy of the plaintiff which was introduced in evidence by the defendant, and assume further that the company's experience during each of the twenty years would be similar to that of the year 1915, a simple computation discloses that Mr. Wallace would have been required to pay, and would have paid, during the twenty year period, an aggregate of $282.52 in premiums. This would be the total amount actually received by the company from Mr. Wallace in the payment of premiums under this policy. But if appellant's contention be correct, the company would be required during this period to pay taxes upon the aggregate sum of $376 as gross premiums received by it from Mr. Wallace. The $93.48 representing the difference between these two sums certainly would not have been actually received by the company. Moreover, the company would not under the terms of its policy have been entitled to collect this amount from Wallace and he could not have been required to pay it. It is true that the policy contained a provision for the payment of an annual premium of $18.80, but it also contained the provision that "upon payment of the second year's premium and at the end of the second and of each subsequent year, this policy, while in force, will be credited with such dividends as may be apportioned by the directors, and such annual dividends will include the portion of the divisible surplus accruing hereon. Dividends thus credited will be paid in cash, or, at the option of the insured, will be applied either *in reduction of premium*, or upon the addition or accelerative endowment plan. . . . " (Italics added.) Assuming, as the law presumes, that the officers of the company would act fairly and regularly in the transaction of its business, the "dividends" which the policy-holder was thus entitled by the terms of his contract to have credited to his policy during each year after the first year thereof would represent, as the evidence shows them to have represented, during the year 1916, the difference between the premium rate specified in the policy and the actual cost of that item of insurance for that period. Some language is used in the case of *Northwestern Mutual Life Ins. Co.* v. *Roberts,* 177 Cal. 540 [171 Pac. 313], which appears upon its face to give support to the contentions of appellant herein. But

that language must be read in the light of the facts proved and the facts found in that case. That action was brought upon the theory that the "dividends" returned to the policyholders were "return premiums" within the meaning of that phrase as used in the constitutional provision above quoted. The findings and judgment therein were in favor of the defendant. What was said in the opinion in that case concerning the facts as to the sources from which the "dividends" were derived was based upon the facts as disclosed by the evidence in that case, properly interpreting that evidence in support of the findings and judgment. The findings herein expressly and completely negative the existence of such a state of facts as was there referred to, and no claim is made herein that they are not fully sustained by the evidence. The findings herein present substantially the precise situation upon the facts which obtained in the case of *Mutual Benefit Life Ins. Co.* v. *Herold* (D. C.), 198 Fed. 199, which was cited and distinguished upon its facts in the Northwestern case, *supra.*

We are unable to escape from the conclusion that the plaintiff received no more than $13.88 from Mr. Wallace during the second year of his policy, and that it should not be required to pay a tax upon any greater sum.

The judgment is affirmed.

Waste, J., Lawlor, J., Lennon, J., Seawell, J., and Richards, J., *pro tem.,* concurred.

Wilbur, C. J., deemed himself disqualified and did not participate in the foregoing opinion.

Rehearing denied.

All the Justices concurred.