347 P.2d 179

UTAH FARM BUREAU INSURANCE COMPANY, a corporation, Plaintiff,

v.

STATE TAX COMMISSION of the State of Utah, Defendant.

No. 8913.

Supreme Court of Utah.

Dec. 8, 1959.

5. Florida, Michigan, Missouri, North Carolina and Rhode Island.

C. N. Ottosen, Salt Lake City, for plaintiff.

Walter L. Budge, Atty. Gen., for defendant.

CROCKETT, Chief Justice.

Utah Farm Bureau Insurance Company seeks review and correction of a decision of the Tax Commission assessing tax liabilities for the years 1953, 1954, 1955 and 1956.

The company was organized in 1950, under what is now Chapter 6, Title 31, U.C.A.1953, as a stock insurance company. It so operated until October 31, 1954, at which time, by amendment to its articles, and without interruption of business activities, it changed to a County Mutual Fire Insurance Company as permitted by Chapter 21 of Title 31, U.C.A.1953.

During its operations as a stock company the tax liability of the insurance company was fixed by Section 31–14–4(1) and (3), U.C.A.1953 at "two and one-fourth (2¼) per cent of the premiums received by [the company]" with certain deductions allowed, including those with which we are here concerned: (a) premiums returned or credited to policyholders and (b) dividends paid, or credited or applied in abatement or reduction of premiums.

It is obvious that the change to a county mutual fire insurance company was effected to get the benefit of a lesser tax liability while permitting the company to continue the same type of operation. On the mutual type of company, Section 31–21–2, U.C.A. 1953 imposes a tax at the rate of "½ of one per cent of the gross amount of premiums received, less the amount of all premiums returned."

The provisions of the Commission's order here under attack are:

A. Refusal to allow the company to deduct dividends declared by the directors

and/or stockholders of the stock company but not distributed before the change-over date, October 31, 1954.

B. Refusal to allow the mutual insurance company to deduct dividends declared or credited to policyholders as "premiums returned" under the statute.

C. Ruling that the company was obliged to pay tax at the 2¼% stock company rate on $171,377.78 premium reserve fund it held on the change-over date, instead of allowing payment at the one-half per cent mutual rate.

D. Disallowance of prorating of $2,857.50 examination fee paid in 1956.

A. The Commission bases its refusal to allow deduction of dividends by the stock company on the ground that they were not credited to any specific policyholders prior to the change-over; whereas, the company contends that the declaration of the dividends and setting up the liability therefor was sufficient to make them deductible under the statute.

■ The applicable statute permits the deduction of dividends if "* * * paid or credited to policyholders within this state or applied in abatement or reduction of premiums due during the calendar year next preceding * * *."[1] The Commission's position is that under that language the dividend must be actually paid or cred-

ited to the individual policyholder, and since no part of the $75,525.32 in question was so disbursed or credited prior to the change-over date, October 31, 1954, it refused to allow the deduction. The facts are that the books of the company show that this fund consists of two separate items of dividends which were handled differently. The first is $15,878.68, the unpaid amount of a dividend declared in June, 1954. As to the amount, the company had set up individual credits which appeared on the IBM card of each policyholder. Thus the right of each stockholder had attached when the specific amount of the dividend was declared and it was so set aside to him. Thereafter he was creditor of the corporation to the extent thus shown on its records.[2] This crediting of the account meets the requirement of the statute.

■ As to the remaining $61,646.64 of the fund, claimed to be returned dividends, the situation is different. On August 3, 1954, the stockholders, at the same time as they authorized a change-over to a mutual company, and in anticipation of it, also resolved that, "all earned surplus of the company at the time of conversion to a mutual company be returned to the policyholders as patronage dividends in such manner as may be determined by the board of directors." This appears quite plainly to have been solely for the purpose of re-

1. Sec. 31-14-4(1) U.C.A.1953.

2. 11 Fletcher, Cyclopedia Corporation, Sec. 5320, p. 950 and Sec. 5322, pp. 960-970.

moving the surplus from the stock company. But neither the amount nor the manner of payment was then determined, and this was not done until after the date of mutualization. There is therefore no indication that the fund was either credited to policyholders or applied in abatement or reduction of premiums as required by the statute quoted above. Consequently the Tax Commission was correct in refusing to allow a deduction of that item in computing plaintiff's tax on its stock company liability.

B. The next problem, pertaining to the treatment of dividends after mutualization, involves the method practiced by this company of crediting or applying dividends against premiums so that a policyholder only pays the net balance. For example, if the premium for the period is $50 and the company declares a dividend of $10, the policyholder pays to the company and the company receives the net amount of $40. The Tax Commission contends that the tax should be computed on the full $50 premium; the company that it should be figured only on the $40 actual cash received.

There is concededly a sharp conflict of authority on this question.[3] The Tax Commission takes the position that the wording of our statute indicates that the legislature expressly provided that stock insurance companies could deduct dividends because they are taxed at the higher $2\frac{1}{4}\%$ rate, while there is no such express provision for mutual companies which are taxed at the lower one-half of one per cent rate, and that it was therefore intended that they are to be taxed on the basis of "gross premiums received" as specified in the policy. Cases relied upon by the Commission hold that even though a mutual insurance company purports to provide insurance at cost, the credits are not a return or reduction of premiums but are in fact dividends.[4] Several reasons are given for this: (a) that such companies have income from investments, so the "dividend" is not entirely a return of the excess premium contracted for over the actual cost of the policyholder's insurance;[5] (b) policyholder owners in mutual companies change from day to day so that the dividend to the current owner results in large measure from "excess" premiums collected from policyholders who may have ceased to be such;[6] and (c) it is also argued that the phrase "return of premium" by custom in the business and as regarded in law should be limited to the literal repayment of the whole or part of the premium upon the cancella-

3. See Annotation 141 A.L.R. 1411–1422, and cases cited therein.

4. Cochrane v. National Life Ins. Co., 77 Colo. 243, 235 P. 569.

5. New York Life Ins. Co. v. Burbank, 209 Iowa 199, 216 N.W. 742.

6. Ibid.

tion of the contract of insurance before its expiration period.[7]

We believe that the better view is represented by the cases which hold that any return to the policyholder, whether called a dividend or otherwise is in reality a refund of an overcharge and in practical effect amounts to a return or reduction of premium which should not be taxed.[8] This viewpoint was discussed and well expressed, in Penn Mutual Life Insurance Co. v. Lederer,[9] by Justice Brandeis:

"* * * Dividends may be made, and by many companies have been made largely, by way of abating or reducing the amount of the renewal premium. Where the dividend is so made the actual premium receipt of the year is obviously only the reduced amount. But as a matter of bookkeeping, the premium is entered at the full rate and the abatement (that is, the amount by which it was reduced) is entered as a credit. The financial result both to the company and to the policyholders is, however, exactly the same whether the renewal premium * * * remains unchanged, but is paid in part either by a credit or by cash received as a dividend. * * *"

In harmony with the above is the well-recognized rule that in case of ambiguity, uncertainty or doubt, taxing statutes are construed liberally in favor of the taxpayer and strictly against the taxing authority.[10] Therefore, the mutual company should be permitted to compute its tax liability on the basis of the net premiums received by it.

C. The company held unearned premium reserves of $171,377.78 on the change-over date, October 31, 1954. It attempted to avoid the payment of the $2\frac{1}{4}\%$ tax, which would have been chargeable against it as a stock company, by indulging in the fiction that this fund was returned to the policyholders, and repaid to the mutual company as unearned premiums on that date. It concedes that no assets were liquidated, none of the policies were cancelled, and that no part of this premium fund was actually credited or returned to the policyholders.

The Commission's decision on this point rests upon its conclusion that the statutory language imposing a "tax of two and one-fourth $(2\frac{1}{4})$ per cent of the total premiums received by it. * * *" means that the tax is imposed on all premiums as of the time they are received and not when they are earned. Its position is uniformly

7. Northwestern Mutual Life Ins. Co. v. Roberts, 177 Cal. 540, 171 P. 313.
8. New York Life Ins. Co. v. Chaves, 21 N.M. 264, 153 P. 303; Mutual Ben. Life Ins. Co. of Newark, N. J. v. Richardson, 192 Cal. 369, 219 P. 1003; State v. Hibernia Ins. Co., 38 La.Ann. 465.
9. 252 U.S. 523, 40 S.Ct. 397, 398, 64 L. Ed. 698.
10. Pacific Intermountain Express Co. v. State Tax Commission, 8 Utah 2d 144, 329 P.2d 650; and cases cited therein.

sustained by the authorities: a premium is earned and becomes the property of the company, for the purpose of taxation, as soon as the premium is received and the risk begins, notwithstanding it may be held subject to future contingency.[11] We are in accord with the ruling of the Commission that the change-over to a mutual company would not permit it to avoid the application of that rule.

D. The final item in controversy concerns an examination fee of $2,857.50 paid in 1956. Pursuant to an order of the insurance commissioner under Section 31–3–1, U.C.A.1953, the company had its books and records examined for the six years, 1950 through 1955. The statute permits stock companies to deduct the full amount of such examination costs from their tax liability, but does not do so with respect to mutual insurance companies.[12] The Tax Commission ruled that, since the examination was made after mutualization, it was not allowable as a deduction, citing Equitable Life & Casualty Ins. Co. v. State Tax Commission.[13] That case held that even though the examination fee exceeded the company's total tax liability for one year, no unused portion of such cost could be carried forward to the next year, and used language to the effect that the examination fee could be deducted only in the year in which it was paid.

We have no disagreement with the ruling of the Equitable Life case cited above: that the examination fees could not be applied prospectively against premium taxes based on premiums collected by the mutual insurance company. But the instant case is quite different. The plaintiff here claims that it should be allowed a pro rata deduction of the above stated examination fee for the portion of time it was operating as a stock company during that period, that is, 58 months of the 72 months covered by the examination.

The examination fees paid in 1956 might and should have been paid, at least partially while plaintiff was operating as a stock company. The insurance commissioner is directed by statute to order an examination "not less frequently than every three years." [14] If he had complied with this duty there would have been an examination for the years 1950 through 1953, and the examination fee would have been paid and deducted by the company from the taxes payable for 1954. It would be unjust for the company to be deprived of this advantage because of the failure of the insurance commissioner to order the examination at the time required by law, a situation beyond the control of the company. In regard to

---

11. 84 C.J.S. Taxation § 167, p. 325.
12. Sections 31–14–4(3) and 31–21–2, U.C.A.1953.
13. 122 Utah 293, 249 P.2d 955.
14. Sec. 31–3–1, U.C.A.1953.

428

the examination fee, it is our conclusion that in view of the fact that the company owes taxes for the period covered, it should be allowed a pro rata deduction for the portion of the examination fee which related to the period covered by its operations as a stock company.

The decision of the Commission is affirmed in part and vacated in part, as indicated in the conclusions hereinabove stated. No costs awarded.

WADE, HENRIOD, McDONOUGH and CALLISTER, JJ., concur.