[No. 24921. Department Two. January 26, 1935.]

JOHN MOSSUTO *et al.*, *Plaintiffs,* THOMPSON-CADILLAC COMPANY, *Respondent,* v. UNITED STATES CASUALTY COMPANY, *Appellant.*[1]

*Danson, Lowe & Danson,* for appellant.

*Gleeson & Gleeson,* for respondents.

[1]Reported in 40 P. (2d) 170.

GERAGHTY, J.—This action was brought by Mossuto and wife to recover upon an insurance binder written by the defendant United States Casualty Company, and alleged by the plaintiffs to be a contract indemnifying them against any public liability and property damage suffered in the course of their operations in excavating a certain lot in the city of Spokane.

Mossuto entered into a contract with W. R. Matthews for excavating lot 3, block 37, Railroad Addition to Spokane. The lot was of rocky formation, and the use of explosives would be required in the operation. Mossuto was acquainted with Rosswell S. Matthews (sometimes referred to in the record as Ross Matthews), who was in the insurance business and had authority to solicit business as agent for the defendant. Matthews consulted the general agents of the defendant in Spokane, Hahn & Daly, about the policy. Dotson, a special agent of the defendant then in the city, was also consulted. As a result, a combination office binder was written covering Mossuto's operations for the period of fifteen days, beginning with noon of the fifth of May, 1930. This binder referred to lot 3, upon which the work was to be done, described the character of work as building construction, identified the amount of insurance as "limits 10/20," and recited that the company

" . . . by these presents has authorized its agent to bind insurance subject to the provisions and conditions of its policy form (excepting only cancellation wherein the terms of this binder are substituted) applicable to the risk described, for a period of fifteen (15) calendar days (including the unexpired part of the day this binder becomes effective) subject, however, to cancellation, by the Company or its agent, by written notice or telegram delivered at the Assured's address herein given or to him personally, and to become effective at twelve o'clock midnight of the second business day following the date of such notice.

Assured accepts this binder on such terms and subject to the provisions herein stated.''

The binder was countersigned by Hahn & Daly, the company's general agents in Spokane.

On May 9th, Hahn & Daly received a telegram from the defendant's office in New York requesting them to replace ''public liability and property damage risks William R. Matthews and John Mossuto covered by and under binders.'' On May 12th, Mr. Daly, of Hahn & Daly, showed this telegram to Ross Matthews, and on May 14th, Daly advised Matthews that arrangements had been made with the agents of another company to carry the insurance on the Mossuto contract. The binder written by the defendant had been given to William R. Matthews, the owner of the lot, and it was in a file in his desk, accessible to Ross Matthews, whose desk was in the same office. Ross Matthews took the binder out of this file and brought it to Hahn & Daly in the forenoon of May 14th, for the purpose, as he testified, of furnishing the necessary information for writing the new insurance in the other company.

A new binder was written by McCrea & Company, insurance agents for the Ocean Accident and Guarantee Corporation, and brought to the office of Hahn & Daly. Hahn & Daly were advised, however, that this binder would require confirmation from the company's head office in San Francisco before it would be effective to cover blasting, and that it would take at least a day to get this confirmation either by wire or air mail.

Up to this time, no notice had been given to Mossuto of the defendant's objection to the binder or its wish to have it replaced. Ross Matthews returned to the office of Hahn & Daly about two-thirty in the afternoon, and was given the new form of binder in the

Ocean Accident and Guarantee Corporation. Matthews put the new binder, incomplete for lack of confirming authority, in his pocket, and went to the office of Attorney Mack, where he was to meet Mossuto in relation to another contract which Mossuto was negotiating. Under the direction of Daly, a clerk in his office stamped the defendant's binder cancelled.

At Mr. Mack's office, Ross Matthews told Mossuto for the first time that the company requested a replacement, and that a new binder had been written, but was not complete. Matthews had the new binder in his pocket, but did not deliver it to Mossuto. At four o'clock that afternoon, a premature blast occurred at the work, causing damage to a number of automobiles owned by the Thompson-Cadillac Company and stored on an adjacent lot.

The Thompson-Cadillac Company subsequently sued Mossuto and wife for this damage, and recovered a judgment against them in the sum of twenty-five hundred dollars. After the institution of this suit, the Mossutos tendered its defense to the defendant casualty company, claiming it was its duty to do so under the terms of the binder written on May 5th. The defendant declined to defend, and denied liability on the binder. This suit is brought by the Mossutos against the defendant to recover upon its binder for the damage suffered by them by reason of the judgment recovered by the Thompson-Cadillac Company. The judgment has not been paid by the Mossutos.

At the close of plaintiffs' case, the defendant's motion to dismiss was denied; a like motion was denied at the close of all the testimony, and the motion of plaintiffs for a directed verdict was granted. Motions for judgment notwithstanding the verdict or, in the alternative, for a new trial were made by the defendant and denied.

After the verdict and before the entry of judgment, the Thompson-Cadillac Company appeared in the action by petition, and prayed to be substituted as plaintiff in place of the Mossutos, in accordance with Rule of Practice II of this court (Rem. Rev. Stat., § 308-2 [P. C. § 8676-5]). This petition alleged the recovery of the judgment against the Mossutos; that the judgment had not been paid, and that the Mossutos were insolvent; the execution by the defendant of a contract with John Mossuto, by the terms of which it agreed to insure him against liability imposed by law for damages sustained by any person or corporation through or during the operation of removing rock in performance of his contract with Matthews; that, under the terms of the contract, it was agreed that, in the event of the bankruptcy or insolvency of Mossuto, the casualty company would not be released from the payment of any judgment recovered against Mossuto, by reason of any damage sustained through the operation of removing such rock; and that, if, because of such bankruptcy or insolvency, an execution against Mossuto or enforcement of any such judgment was returned unsatisfied, an action might be maintained by such injured person or corporation against the defendant for the amount of such judgment so obtained.

Notice of the filing of this petition was served upon the plaintiffs Mossuto and the defendant. The plaintiffs contested the substitution, and filed an answer to the petition. The defendant appeared by its attorneys, and filed an answer. The issues raised by the petition and the answers were heard by the court, and an order made substituting the Thompson-Cadillac Company as plaintiff in place of the Mossutos. This order of substitution is not challenged here. After the making of the order of substitution, judgment was

entered upon the verdict in favor of the substitute plaintiff. The defendant appeals.

The appellant assigns as error the denial of its motions for dismissal and judgment made at the close of plaintiff's case and at the close of all the evidence in the case, and the court's action in directing a verdict and entering judgment thereon in favor of the respondent. The appellant discusses these assignments under three heads: (1) There was no proof that the judgment recovered against Mossuto had anything to do with any liability which might be covered by the binder sued upon; (2) it was affirmatively shown that Mossuto's agent Matthews had accepted a cancellation of the binder and procured new insurance; (3) that the plaintiff failed entirely to prove the terms of the contract sued upon. We shall consider these points in the order stated. (As, by reason of the substitution, Mossuto, the original plaintiff, is not a party upon this appeal, for convenience we shall continue to refer to him as plaintiff.)

1. Plaintiff did not introduce in evidence the judgment or the judgment roll in the first case. Appellant contends that the judgment roll should have been introduced in evidence. It is undoubtedly the rule that, in an action on a judgment, the judgment roll is the best evidence of the issues adjudicated, but the present action is not one based primarily upon the judgment, but upon the contract of appellant evidenced by the insurance binder. If the judgment roll had been introduced, it could have established no more than the fact that a judgment had been recovered by the Thompson-Cadillac Company against the plaintiff for the negligent injury of its property. It would have been necessary to establish by parol evidence the connection between the facts upon which the judg-

ment rested and the obligation assumed by the appellant under its binder.

In *Spokane v. Costello,* 33 Wash. 98, 74 Pac. 58, the city sued a contractor for liability over on account of a judgment recovered against it by one who had been injured through the negligence of the contractor in the improvement of a city street. The city rested its case upon the judgment roll introduced in evidence. This court reversed the judgment of the trial court in favor of the city, holding that the pleadings and record failed to connect the contractor with the active negligent acts upon which the judgment was obtained.

The complaint in the instant case alleged the making of a contract by plaintiff for excavating and removing rock from a specified lot in the city of Spokane; that, before commencing operations under the contract, plaintiff applied to appellant for a liability policy protecting him from loss or damage resulting from any accident in the use of dynamite or other explosives in the prosecution of the work; the knowledge of appellant that large quantities of dynamite and blasting material would necessarily be used; that, with this knowledge and in fulfillment of its agreement to furnish plaintiff the necessary insurance for his protection, a combination office binder was written and delivered to him to cover his operations for a period of fifteen days commencing twelve o'clock noon, May 5, 1930. The complaint further alleged that no copy of the company's policy form, referred to as a binder, was delivered to plaintiff, but that he was informed that the insurance policy to be issued would fully protect him from liability.

It is alleged that, within the fifteen-day period covered by the binder, an accidental explosion of an excessive charge of dynamite occurred, injuring a number of automobiles belonging to the Thompson-Cad-

488

illac Company, and the bringing of an action by that
company and the resulting judgment in the sum of
twenty-five hundred dollars; that notice of this action
was given to the appellant, accompanied by copy of
the summons and complaint and a request that it de-
fend; that appellant denied liability and declined to
assume defense of the action; that no appeal had been
taken from the judgment, and that it stood as an out-
standing liability of the plaintiff.

The appellant's answer admitted the issuing to
plaintiff of a combination office binder on May 5th,
effective for a period of thirteen days, but denied that
its effect was as alleged in the complaint. The answer
admitted the bringing of an action by the Thompson-
Cadillac Company, the notice to defend, its denial of
liability and refusal to accept defense of the suit.
The entry of judgment against the plaintiff in the sum
alleged was admitted, and also that no appeal had
been taken and that the judgment was a liability of
the plaintiff. Similar admissions were made in the
course of the trial by attorneys for appellant. The
appellant conceded substantially all the facts that
could be proven by the judgment roll. While appel-
lant's admissions were guarded, when read in connec-
tion with the allegations of the complaint they imputed
more than the appellant contends.

But whatever was lacking to establish the con-
nection between the judgment in the damage suit and
appellant's contract, was supplied by the proceedings
had upon the substitution of respondent as plaintiff
in the action below. The substitution could have been
made under Rule of Practice II (Rem. Rev. Stat.,
§ 308-2 [P. C. § 8676-5]) only upon a finding by the
court that the substitute plaintiff held such relation
to the matters in issue in the action that it could have
maintained an independent action against appellant or

been joined with Mossuto initially as plaintiff in the action. To establish its right to substitution, it necessarily had to show its own relation to the judgment and the relation of the judgment to the binder contract issued by the appellant. In other words, it had to prove the allegations of its petition for substitution, which included the execution of the binder agreement covering the blasting upon lot 3, the occurrence of an explosion in the prosecution of the work covered by the binder, the damage to its property as a result of the explosion and the recovery of a judgment against Mossuto therefor. The record here does not disclose the testimony upon which the court made the order of substitution. The order is not challenged by the appellant, and it must be presumed to have been made upon adequate proof of the necessary facts.

2. Appellant's second point is that Ross Matthews was the agent of plaintiff, and acting as such agent, delivered to appellant's agent, Hahn & Daly, the binder sued upon, and that the binder was cancelled before the occurrence of the explosion. The evidence is against appellant's contention. Ross Matthews was an agent of the appellant, authorized under a license issued by the insurance department of the state to solicit insurance for it. This license could have been issued only upon the approval of the appellant. He was in no sense the agent of the plaintiff. He testified, quoting from the abstract:

"Mossuto said he wanted $10,000 property damage insurance. He said he wanted to get it as soon as he could because he didn't want to go to blasting until he had his insurance. I told him I represented the United States Casualty Company when I solicited the insurance. He told me to write the insurance. He left it to me to cover him and write the insurance. . . . I solicited before the contract was signed and made arrangements before the contract was

signed and told Mr. Mossuto I could get it. . . . I gave this binder to Mossuto and explained to him that a policy would be issued later . . . Mr. Mossuto turned his binder over to William R. Matthews and he placed it with his own binder and contract in his desk. It never left the office as far as I know.''

The binder contained a clause reserving to the appellant or its agent the right, by written notice or telegram delivered at the assured's address or given to him personally, to cancel the binder, the cancellation to become effective at twelve o'clock midnight of the second business day following the date of the notice. It is not contended that appellant gave the notice required by this clause. The only steps taken by appellant to terminate its liability was the telegram to its agents, Hahn & Daly, to replace elsewhere the Mossuto risk, and the subsequent negotiations of Hahn & Daly with the agents for another company to issue the new binder, which was not effective for lack of authority.

Mossuto was not advised of the appellant's request to replace the risk until the afternoon of the fourteenth, shortly before the explosion occurred. Ross Matthews left appellant's binder at the office of Hahn & Daly on the forenoon of the fourteenth for the purpose of furnishing the necessary information for writing the substitute insurance to be issued out of the office of W. S. McCrea & Company. Returning to the office of Hahn & Daly in the afternoon, he was told that a new binder had been written, but that it would not be effective to cover blasting until confirmation was received from San Francisco. Matthews put the new binder in his pocket, and left the office of Hahn & Daly to keep an appointment with Mossuto at the office of Attorney Mack. It was at this time that Mossuto received the first information that the appellant

desired to have its risk replaced. Matthews testified, quoting from the abstract:

"After that I went over to Mr. Mack's office in the Old National Bank Building and met Mr. Mack, Mr. Mossuto and a man by the name of Simons. I had the binders with me. The discussion there was about an additional job on the adjoining lot. There was a discussion about the insurance after we came out of the office. I told Mr. Mossuto that the company on his blasting insurance had requested us to replace the insurance. I told him I had some binders but they weren't complete, that we had been notified that they had to get special permission from San Francisco. I had the binders with me but I didn't give them to Mr. Mossuto. When I received these new binders from Mr. Daly I left the binders of the United States Casualty Company with him. They were left to be used as a copy or data for getting new binders."

Whatever may have been the relation of Ross Matthews to the parties, there was in fact no surrender of appellant's binder, nor any acceptance by plaintiff of the new incomplete binder. *Tacoma Lumber & Shingle Co. v. Firemen's Fund Ins. Co.*, 87 Wash. 79, 151 Pac. 91. Appellant's binder was left at the office of Hahn & Daly to furnish necessary information for writing the new binder, and not for cancellation, and the stamping of it as cancelled by an office clerk was unauthorized.

3. Appellant's third contention is that there was no proof of the terms of the contract. The binder recited that appellant had authorized its agent to bind insurance subject to the provisions and conditions of its policy form, and appellant contends that this form was an essential part of the contract, and proof of its contents was necessary to complete plaintiff's case.

The terms of the binders were sufficiently definite to establish the contract made by the parties. Certainly, appellant can not be heard to say it gave the plaintiff

a meaningless piece of paper. The binder was intended to give protection for the period of fifteen days, unless a policy was written in the meantime. It identifies the lot where the work was to be carried on, the kind of insurance as public liability and property damage, and the amount of coverage as "10/20," a term commonly used and well understood as meaning insurance protection limited to ten thousand dollars in a single recovery or to twenty thousand dollars in the aggregate for all claims resulting from any one accident, and so testified to by the witness W. R. Matthews. If the policy form contained conditions qualifying the terms of the binder, the appellant could have introduced it in evidence.

It is true the policy did not specifically refer to blasting, and an inference might be drawn from the record that it is the custom of insurance companies to make special provision for blasting coverage. This inference may be drawn from the fact that the first binder issued by the Ocean Accident and Guarantee Corporation, through the office of W. S. McCrea & Company, while covering public liability and property damage in language similar to that used in appellant's binder, was reported by that company's agency to Hahn & Daly as not covering blasting. This apparently was the fact that made the coverage incomplete, and it appears that a second binder, issued to the plaintiff by the Ocean company some days after the explosion, specifically covered blasting.

Now, if the agents of the appellant, knowing the character of protection sought by the plaintiff, issued to him a form of contract that did not in terms furnish this protection, it was a fraud upon him, and he could prove by parol evidence, as he did, the terms of his application and the character of protection the appel-

lant agreed to furnish. *Washington Fire Relief Ass'n v. Albro*, 130 Wash. 114, 226 Pac. 264.

The judgment will be affirmed.

MILLARD, C. J., BEALS, TOLMAN, and HOLCOMB, JJ., concur.