[S. F. No. 16980.   In Bank.   July 30, 1945.]

INDUSTRIAL INDEMNITY EXCHANGE (an Interinsurance Exchange), Respondent, v. STATE BOARD OF EQUALIZATION et al., Appellants.

Robert W. Kenny, Attorney General, and T. A. Westphal, Jr., and Harold B. Haas, Deputies Attorney General, for Appellants.

Burbank & Laumeister and Daniel W. Burbank for Respondent.

CARTER, J.—According to the stipulation of facts in this case plaintiff is an organization called an interinsurance exchange dealing in workmen's compensation insurance pursuant to sections 1280-1530 of the Insurance Code. The subscribers to the organization exchange insurance contracts with each other. The subscribers have executed contracts appointing Industrial Underwriters, Inc., a corporation, as their attorney in fact to exchange the contracts of insurance between them. The latter corporation generally speaking is in charge of the business of the exchange. (*Mitchell* v. *Pacific Greyhound Lines*, 33 Cal.App.2d 53 [91 P.2d 176].) In the agreement with the attorney in fact each subscriber agreed to deposit a sum, "computed as required by the terms and conditions of his policy. . . ." The agreement also stated that "Except as otherwise herein provided, all 'savings accruing to the subscribers shall be returned annually, unless otherwise determined by the Advisory Committee' . . ."; and "As compensation for the services to be performed hereunder, said Attorney after first deducting the cost of any reinsurance, may withhold seventeen and one-half percent of all compensation premium deposits received and in addition the Attorney

is to receive a sum equal to five percent of the subscriber's savings; . . ."

In 1936 the exchange received from the subscribers premium deposits amounting to $1,604,514.45. By resolution of the advisory committee of the exchange, $197,702.04 was declared as savings returnable to the subscribers as a refund of distributable surplus and directed the accounts of the subscribers to be credited therewith. Pursuant to the resolution the exchange credited on its books the latter amount to the subscribers' accounts, but paid to such subscribers only 95 per cent thereof (the sum of $187,817.04). The balance of 5 per cent ($9,885.10) was paid to the attorney in fact pursuant to the clause in the agreement last above-quoted. Deducting the sum of $197,702.04 from the sum of $1,604,514.45 leaves a balance of $1,406,812.41. Defendant Board of Equalization assessed as taxable to the exchange the balance remaining after deducting 95 per cent of the $197,702.04 or the sum of $187,817.04 from $1,604,514.45, asserting that inasmuch as the 5 per cent was paid to the attorney in fact and not the subscribers, the mere crediting of the 5 per cent on the books to the subscribers did not bring it within the deductions allowed in computing the tax. Plaintiff having paid the tax assessed under protest recovered judgment and defendants appeal. Plaintiff contends that under the statute involved it is sufficient that the full $197,702.04 was credited as savings to the subscribers to make that sum not subject to the tax, and that it is immaterial that 5 per cent thereof was not paid to the subscribers, for the payment of the latter to the attorney was the discharge of the individual obligation of the subscribers to the attorney with which the exchange had nothing to do.

The taxing statute reads:

"In lieu of all other taxes, licenses or fees whatever, State or local, each exchange shall pay . . . an annual tax upon all sums paid in the preceding calendar year by subscribers in this State by reason of the insurance exchanged, whether termed premium deposit, membership fee, or otherwise, *after deducting therefrom* premium deposit returns or cancellations, consideration for reinsurance and *all amounts returned to subscribers and/or credited* to their accounts as savings; . . ." (Emphasis added.) (Ins. Code, § 1530.)

We take it that the foregoing section should be considered

as fitting within the wording of the constitutional provision on the taxation of insurance companies or associations which provides that every insurance company or association "shall annually pay to the State a tax, . . . of two and six-tenths per centum upon the amount of the gross premiums, less return premiums, received upon its business done in this State, . . . provided, that there shall be deducted from said two and six-tenths per centum upon the gross premiums the amount of any taxes paid by such companies on real estate owned by them in this State." (Cal. Const., art. XIII, § 14¾.) The term companies is declared to include "persons, partnerships, joint stock associations, companies and corporations." It is apparent from that provision that the tax is upon *gross premiums* rather than net premiums. The only deductions or amounts that are not a part of the gross premiums are expressly mentioned as return premiums and reinsurance. The only deduction is taxes paid on real estate. However, such dividends, or savings as are present in the instant case, payable because of the excess of the payment stated in the policy over the cost of insurance, are really not a part of the gross premium. (See *Mutual Benefit L. Ins. Co.* v. *Richardson*, 192 Cal. 369 [219 P. 1003].) Harmonizing section 1530 of the Insurance Code with that provision it appears that the tax on interinsurance exchanges is on *all* sums (gross amount) paid by subscribers by reason of insurance exchanged whatever term may be used to describe such sums. The sums mentioned are similar to gross premiums and the tax is on such gross amount. Likewise, to render any portion of that amount nontaxable, it should appear that such portion of the sums was in effect not a part of the necessary premium or stated amount paid by the subscribers but was the excess over the cost of the insurance, that excess being described in section 1530 as savings to the subscribers. That portion being of such a character it was really not a part of the gross premium. Hence, in the instant case in determining whether or not the 5 'per cent involved should be considered a part of the savings within the words "returned to subscribers and/or credited to their accounts as savings" used in section 1530, we should consider whether or not this item made up a part of the cost of the insurance or was really not a part of the sums paid by reason of insurance exchanged. ■ Moreover, the purpose and aim of the gross premium tax is to arrive at the true

value of the thing taxed. (See *Camden Fire Ins. Assn.* v. *Johnson,* 42 Cal.App.2d 528, 531 [109 P.2d 447].)

It is clear that the 5 per cent was in the same category as the 17½ per cent mentioned in the last above-quoted excerpt from the agreement with the attorney in fact, which was also paid to the attorney. Both were compensation for its services. Merely because the 17½ per cent was based upon a different figure (the total sums paid) rather than the savings is unimportant. It was nothing more than a different *method* of calculation to arrive at the same thing, compensation, not a payment for a different purpose. The word "savings" in section 1530 must be viewed from the standpoint of the subscribers, that is, were there savings as to them? No other corporation, person or association of persons is concerned. Certainly there were no savings to the subscribers when the 5 per cent yet remained to be deducted. That was a part of the cost of its participation in a reciprocal insurance arrangement as much as any other item of expense. The use of the word "credited" as well as "returned" with reference to the savings does not alter the situation. The word "credited" as differentiated from "returned" must cover a situation where there was a lack of actual payment. To be "credited" it must have been so set aside for the subscribers that there would be no further claims against it for the current expenses including the compensation of the attorney. To say to the subscribers in one breath you have a savings credit of a certain amount, and in the next, but we are taking 5 per cent away to meet other existing and binding obligations, is sham and pretence. They have no *savings* credited in reality until all of such items have been deducted. The gross sum paid by the subscribers less the savings is not truly reflected until the savings are fairly ascertained.

Plaintiff argues that the language of section 1530 is clear and needs no interpretation; that a tax statute may not be extended by interpretation; and that the tax provided for by section 1530 is imposed upon the exchange rather than upon the subscribers. But applying the statute to the particular facts before us it is obvious that the savings are not in truth such until the 5 per cent compensation to the attorney has been deducted. It is true that the exchange must pay the tax. (Ins. Code, § 1530.) It is also true that while an exchange is not a corporation, it is an organization that may sue and be sued and is treated under some circumstances,

such as liquidation, as an entity distinct from the subscribers and attorney. (*Mitchell* v. *Pacific Greyhound Lines*, 33 Cal. App.2d 53 [91 P.2d 176].) But it does not follow that the 5 per cent agreed to be paid to the attorney by the subscribers is a matter entirely separate from the transactions of the exchange as an entity in determining what are savings. Realistically viewed, the exchange does not have savings. There may be strings attached to the payment of the surplus to the subscribers in case of insolvency or in other situations. While the organization represents the subscribers and controls the funds, we must look at the subscribers' side of the picture to ascertain what constitutes savings. The subscribers must act through the governing board of the exchange organization. The status of an exchange and its subscribers is discussed in *Mitchell* v. *Pacific Greyhound Lines, supra,* at page 59 where the court said:

"From what has been said, it is apparent that a reciprocal 'organization' differs in many respects from the ordinary stock or mutual insurance company. It has no stock and no capital as such. Its operating funds consist of the premiums paid for its policies and the earnings on any investment of those premiums. The contingent liability of the subscribers (Sec. 2) to pay sums in addition to their premiums stands in the place of the capital of the stock company and the liability of the subscribers to meet such contingent liability may be likened in some respects to the liability to pay unpaid stock subscriptions to a stock company. The plan appears to be designed *for those who desire to assume the positions of both the insurer and insured* with a view to eliminating that part of the ordinary insurance premium which goes into profit." The agreement between the subscribers and the attorney speaks of the savings as belonging to the subscribers rather than to the exchange. It states: "all savings *accruing to the subscribers* shall be returned annually, unless otherwise determined by the Advisory Committee." If the 5 per cent compensation to the attorney was considered an individual and separate obligation of the subscribers with which the exchange had nothing to do in computing the savings, then by the same reasoning the ultimate result would be no gross premium to tax. All of the expenses of the exchange of insurance including losses would be the independent liability of the subscribers, and the exchange as an organization, having no expenses,

could claim that all of the premiums paid were savings. There would be no obligations to deduct therefrom because there would be none. We do not believe it was the intention of the Legislature that its act could be rendered so ineffective by a mere bookkeeping procedure. The relation between and status of the attorney, subscribers and exchange cannot be so segregated that the payment of the tax imposed may be avoided in whole or in part.

It is urged that the payment of the 5 per cent is contingent upon there first being savings in existence, and once they exist, they are deductible even though the subscribers must pay 5 per cent of them to the attorney. Looking beyond that situation however, it cannot be doubted that as to the subscribers there are no savings until all of the expenses in connection with the insurance have been met. There are savings before the 5 per cent is deducted to pay the attorney but only in the sense that there is a sum left over after meeting all expenses *except the 5 per cent compensation to the attorney.* The 5 per cent must still be paid, and to the subscriber there is no saving until all the costs of his insurance have been met.

For the foregoing reasons the judgment is reversed.

Gibson, C. J., Traynor, J., and Peters, J. pro tem., concurred.

SCHAUER, J.—I dissent. The taxing statute (Ins. Code, § 1530) is applicable to the *exchange* as an entity, not to the individual subscribers. It provides that the "exchange shall pay . . . an annual tax upon all sums paid in the preceding calendar year by subscribers in this State by reason of the insurance exchanged, whether termed premium deposit, membership fee, or otherwise, *after deducting therefrom* premium deposit returns or cancellations, consideration for reinsurance and *all amounts returned to subscribers and/or credited to their accounts as savings. . . .*" (Italics added. ) The stipulation of facts upon which the case is presented recites that "plaintiff exchange *did credit* . . . apportioned amounts as savings to subscribers' accounts on the books of plaintiff exchange; that the aggregate of such sums credited was $197,-702.04; that thereafter plaintiff paid by check to subscribers, 95 per cent of the sum credited to each subscriber and paid

to said attorney in fact five per cent thereof." (Italics added.)

It is upon this five per cent of the savings that the controversy centers. Plaintiff claims that such five per cent is exempt as a part of the duly credited savings while defendants contend that it is not a part of the savings.

It appears to me that the five per cent so paid to the attorney in fact was paid for the accounts of the respective subscribers. It was, in effect, a payment to them. The obligation was their obligation, not that of the exchange. The payment was a disposal of the subscribers' money; the exchange had completed its function and effected the savings. The savings had been duly credited to the subscribers and under the unambiguous terms of the statute such savings, so credited, were deductible from the taxable base.

Accordingly it is my view that the trial court reached the proper conclusion. I am satisfied that the opinion of the District Court of Appeal, First Appellate District, Division Two, prepared by Mr. Presiding Justice Nourse (reported in 152 P.2d 37) in affirming the judgment, correctly disposes of the issues involved. Reference is made to that opinion for its more complete statement of the essential facts and discussion of the applicable principles of law and logic.

Shenk, J., and Edmonds, J., concurred.

Respondent's petition for a rehearing was denied August 27, 1945. Shenk, J., Edmonds, J., and Schauer, J., voted for a rehearing.