[L. A. No. 22110. In Bank. Apr. 28, 1953.]

RALPH H. GROVES, Respondent, v. CITY OF LOS ANGELES et al., Appellants.

Ray L. Chesebro, City Attorney, John L. Flynn, Assistant City Attorney, and W. L. Weber, Deputy City Attorney, for Appellants.

Latham & Watkins and Keene Watkins as Amici Curiae on behalf of Appellants.

G. Revelle Harrison and Thomas B. Sawyer for Respondent.

Edmund G. Brown, Attorney General, and Harold B. Haas, Deputy Attorney General as Amici Curiae on behalf of Respondent.

CARTER, J.—Defendants, the City of Los Angeles, and its chief of police and city clerk (who is its tax collector) appeal from a judgment declaring invalid its Ordinance No. 77,000 as amended by Ordinance No. 92,414, and enjoining the collection of the license tax thereunder. The court found that plaintiff is engaged in the business of soliciting, effecting and negotiating undertakings of bail in and out of Los Angeles as agent of National Automobile and Casualty Insurance Company, a corporation, (hereafter called National) authorized to engage and engaged in the insurance business (including bail bonds) in California; he holds a bail agent's license issued under the law of this state. (Ins. Code, § 1800 et seq.)

Ordinance No. 77,000 as amended by Ordinance No. 92,414 provides that every person in the business of " '. . . soliciting, negotiating, effecting, issuing, delivering, or furnishing bail bonds or of the posting of undertakings of bail for the release of persons charged with public offenses shall pay for each calendar year, or fractional part thereof, a license tax in the sum of $50.00 for the first $5,000 or less of gross receipts, and in addition thereto, the sum of $5.00 per year for each additional $1,000 of gross receipts, or fractional part thereof, in excess of $5,000. The term "gross receipts" as used herein shall not include any insurance premiums received on behalf of any insurance company qualified to do business in the State of California, nor any commissions paid out of such premiums.' " Also thereunder it is unlawful for any person to engage in the specified business without a license and any person violating the ordinance is subject to punishment. The license tax is, however, for purposes of revenue, not regulation. (See *Fox Etc. Corp.* v. *City of Bakersfield,* 36 Cal. 2d 136 [222 P.2d 879].)

It was also found that plaintiff is not engaged in the business of posting bail bonds from which he receives gross receipts as defined in the ordinance other than in the transaction

of insurance business as defined by the Insurance Code. Hence the ordinance violates the Constitution which provides that every insurance company (the term "company" includes persons) doing business in the state shall pay to the state a tax consisting of a fixed per cent upon the amount of the "gross premiums" received upon its business done in this state, and "The tax imposed on insurers by this section is in lieu of all other taxes and licenses, State, county, and municipal, upon such insurers and their property" with exceptions not here pertinent. (Cal. Const., art. XIII, § 14 4/5.)

By its judgment the court declared the ordinance invalid insofar as it purports to impose a tax on plaintiff and that he is not liable for a tax thereunder; defendants are enjoined from collecting any taxes levied on plaintiff by virtue of the ordinance.

According to the evidence plaintiff's business arrangement, generally, was as follows: Groves (not the plaintiff) and Rubin, a partnership doing business as Associated Bond & Insurance Agency (referred to as Associated) is in the surety bail bond business as general agent for National and the partners hold bail agents' licenses. Associated holds general power of attorney from National and power to appoint agents for it over whom it exercises close supervision. It appointed plaintiff as one of such agents for National. Upon receiving an application for a bail bond upon a form furnished by and addressed to National, plaintiff would send it to Associated. It is executed by Associated under its power of attorney from National and delivered to plaintiff—National's agent. The agent reported to Associated every week on business transacted, and the latter reported weekly to National. Agents, such as plaintiff, could charge for a bail bond, any percentage of the face amount not exceeding 10 per cent. They paid 2 per cent of the face amount of the bond (part of which was for a reserve fund to meet losses on bonds) less a certain per cent to Associated and the latter paid 1 per cent of the amount of the bond, less its commission to National. National is the surety or "insurer" on the bond and the one to whom the state looks in case of forfeiture. As between the agent and Associated the former had to make good a loss from forfeiture, and Associated was in the same-position as National in that respect.

This case has been on appeal before (*Groves* v. *City of Los Angeles,* 93 Cal.App.2d 17 [208 P.2d 254]). There plaintiff

appealed from a judgment of dismissal after defendants' demurrer was sustained without leave to amend. The judgment was reversed. Based upon the plaintiff's allegations that he was issuing bail bonds as agent of National and that the latter has paid all the in lieu taxes under section 14 4/5 of article XIII of the Constitution, *supra,* the court held the judgment erroneous, reasoning that no insurer could execute a bail bond except through a person holding a bail license (Ins. Code, § 1800) and that plaintiff alleged he was the agent for National and no more. Hence there was no basis for any assumption that plaintiff was engaged in an independent business or that the revenue from his business was derived from such independent activity within the meaning of the last sentence of the ordinance, *supra,* which excludes from its provisions, insurance premiums received on behalf of an insurance company qualified to do business in this state.

Defendants contend that plaintiff is an independent contractor rather than an agent for National and that hence neither he nor National through him is engaged in the insurance business in the state and thus the in lieu tax provisions of the Constitution, *supra,* do not apply, that the ordinance does not purport to tax an insurance business (exempted under last section, *supra*) and that therefore the judgment enjoining the collection of the tax is erroneous.

The law on the subject was settled in *Hughes* v. *Los Angeles,* 168 Cal. 764 [145 P. 94]. When the Hughes case was decided the Constitution (Cal. Const., art. XIII, § 14(b)) provided substantially the same as now for a state tax on the gross premiums of insurance companies which was ''in lieu of all other taxes or licenses, state, county and municipal upon the property of such companies . . .'' A Los Angeles revenue ordinance imposed a tax of $10 per quarter on every person or corporation carrying on the business of local or general insurance agent, solicitor or broker. The court held the ordinance violated the Constitution, stating: ''Under the authority of *Los Angeles Trust Co.* v. *City of Los Angeles,* (L. A. No. 3271), *ante,* p. 762 [145 P. 94], this day decided, no doubt can be entertained but that if this privilege tax were imposed upon the insurance companies themselves it would be invalid. The distinction sought to be drawn in this case is that this particular license fee is not imposed upon the companies but upon the agents of the companies. This is true, but upon the other hand it is equally true that every insurance corporation must act through agents and can act only through agents, and

that, therefore, in a direct and immediate sense a tax upon such agents for the right to do business is a tax upon the corporation's right to do business. The agents of corporations are the means whereby the corporations live and in opposition to a tax upon their agents the corporations may well be heard to voice Shylock's expostulation:

 " 'You take my house when you do take the prop

 That doth sustain my house; you take my life

 When you do take the means whereby I live.' "

(*Hughes* v. *Los Angeles, supra,* 168 Cal. 764.)

In 1937, the Legislature adopted a statute providing that "An insurer shall not execute an undertaking of bail except by and through a person holding a bail license issued as provided in this chapter." (Ins. Code, § 1800.)

It was held in *Edward Brown & Sons* v. *McColgan,* 53 Cal.App.2d 504 [128 P.2d 186], that the in lieu tax provision of the Constitution (Cal. Const., art. XIII, § 14 4/5, *supra*) for insurance companies did not exempt a corporation, which was an agent representing and selling policies for some 18 insurance companies, from the state corporation franchise tax applicable generally to corporations. In view of the holding of this court in the Hughes case, *supra,* 168 Cal. 764, the soundness of the last cited case may be questionable. However, it may be distinguished on the ground that, although the franchise tax is computed on the net income of the corporation, it is on the privilege of using the corporate mechanism to do business and hence has no relation to the nature of the business conducted. Thus the tax is not on the insurance business within the meaning of the Constitution.

Defendants argue, however, that here the plaintiff was an independent contractor rather than an agent of National and he was engaged in an independent business which was not the insurance business or National's business. Hence his business is taxable by the city, and by reason of the last sentence of the ordinance it does not purport to tax other than that business, and the Hughes case is distinguishable. In effect, they are asserting that the evidence does not support the trial court's findings that plaintiff was engaged in no business other than that of insurance and that he was National's agent.

At the outset, we have the statutory provision that an insurer cannot conduct a bail bond business except by and through a licensed bail agent (Ins. Code, § 1800, *supra*). Even the holding of an agent's license, which must have

the approval of the insurer, is evidence of agency (*Thompson-Cadillac Co.* v. *United States Casualty Co.*, 180 Wash. 481 [40 P.2d 170]; *Stoner* v. *First American Fire Ins. Co.*, 218 Iowa 720 [253 N.W. 821]; *MacDonald* v. *Milwaukee Mechanics' Ins. Co.*, 167 F.2d 276). It will not be assumed that National is violating § 1800 of the Insurance Code, *supra*. On the contrary, the presumption is that it obeyed the law (Code Civ. Proc., §1963(1), (33)), and therefore is doing its bail bond business through plaintiff as its agent. In addition it appears that National gave broad powers to Associated as its agent, expressly authorizing Associated to appoint bail agents for National and to execute bail bonds. Associated was, in effect, substantially the same as an officer of National. Associated exercised close and direct supervision over the agents appointed by it including plaintiff and limited the maximum per cent the agents could charge for the bonds. The agents filed weekly complete reports of business transacted with Associated and the latter in turn with National.

 In support of their claim of independent business, and that plaintiff is not an agent, defendants point to the requirement of the Insurance Code that bail bond agents must meet special qualifications and obtain a license to act as such; that the contracts between National and Associated refer to the ''sale'' of the bonds by the former to the latter for ''resale'' to bail agents and similarly those between Associated and the agents refer to ''sale'' by Associated to the agent for ''resale'' by him to the public; that plaintiff-agent must indemnify Associated rather than National for losses on bonds, and Associated indemnifies National; and that plaintiff maintains his own offices, pays his expenses, controls his affairs and fixes the amount he charges as fees for arranging for bonds. While those things may be factors to consider (see *Garrison* v. *State of California*, 64 Cal.App.2d 820 [149 P.2d 711]), they are not so compelling as to refute wholly the basic circumstances that National may only conduct a bail bond business through agents and hence it must be doing so here; Associated is empowered by National to appoint and does appoint agents such as plaintiff through whom National conducts its bail bond business; Associated is National's instrumentality or agent to appoint agents, and, as such, exercises close supervision over them; the amount charged for a bond is limited by Associated to a maximum of 10 per cent. The use of the terminology of ''sale'' with reference to the bonds as between National, Associated, and the agents,

is of little assistance to defendants, because calling it a "sale" by the agent of something (a bond) purchased by him, is not realistic in view of the other circumstances. There is really no sale as there is no pretense that the title to a bond passes to Associated, then to the agent and finally to a member of the public. Indeed the testimony shows that a mere record-keeping device was in the minds of the parties. One of the partners of Associated testified:

"Q. BY MR. FLYNN: Now, am I correct in understanding your statement, Mr. Groves, that the premium, so far as the copy is concerned, is one per cent? A. That is the amount that is put in here, and the amount that is——

"THE COURT: That is paid to the company?

"THE WITNESS: No. It is quite something to explain. That is the way it was devised at the time these forms were prepared. There was a question, so your Honor will really get what the full picture is—there was a question as to whether or not if the company would have to pay on the gross amount that the agent received as a tax, which necessitated then each agent filing a complete list of each and every bond written, the total amount he received. If they were outside of the State of California, he had to deduct them, and so forth. It made quite a thing, and so then it was devised that this receipt which would show one per cent here is the amount the insurance company or surety company would presumably pay the state tax on, and the balance was to presumably go to the agent and to us, and then we pay the company." (Rep. Tr., p. 106.)

Defendants rely upon various provisions of the Insurance Code, asserting that a broker dealing in ordinary insurance is an agent of the insured and not the insurer, and rebates on premiums may not be given or commissions split by them except where he is placing the insurance with sureties which have not appointed them as agents, citing Ins. Code, §§ 750, 755, 755.5, which are not applicable to bail insurance ". . . except that in such case the licensee who executes the undertaking or executes or delivers the bail bond shall, in *all matters in respect* thereto, be deemed the principal and all licensees otherwise connected with the transaction shall be deemed his agents in respect thereto." (Ins. Code, § 1809.) (Emphasis added.) They reason that therefore the bail agent is an independent contractor like an insurance broker. Accepting their premise it is plain from § 1809, *supra,* like § 1800, *supra,* that in all matters in respect thereto (even if commis-

sions are split or rebates given) the surety on the bail bond is the principal and *all* licensees connected with the transaction are the surety's agent. █ The fact that bail agents are subject to regulation and must meet certain qualifications does not deprive them of the character of agents for the insurer. True, the insurer may not deprive an agent of his state license, but it can discharge him as its agent, and before he can continue to do business as a bail agent, he must find another insurer for whom he may act as an agent and the insurance commissioner must be notified thereof.

One of the main contentions of defendants is that the money received by plaintiff-agent other than the 1 per cent paid to National is not premium for the bond; that the ordinance purports to reach only such receipts of the agent because it excludes from the tax on his gross receipts any insurance premiums received by him on behalf of an insurance company, and, therefore, it does not violate the constitutional provision as the latter reserves to the state the right to tax gross premiums of insurance companies; that lacking the characteristics of premiums, plaintiff's business in receiving them is independent and not as agent of National.

It is urged that the foregoing question is not involved in this case because it does not concern whether the state may tax those receipts, and that the sole issue is whether plaintiff was National's agent and within the holding of *Hughes* v. *City of Los Angeles, supra,* 168 Cal. 764, and thus subject to the ordinance. We believe, however, that the question is so intimately connected with the problem presented that it must be determined. While it is true that no insurance company is a party to this proceeding and there are actions pending in the superior court for Los Angeles County by the state against insurance companies to recover gross premium taxes which involve such receipts, the state Insurance Commissioner and several insurance companies, including National, have filed briefs in this case and discuss the question. The judgment rendered by the trial court in this case is broad. It declares that plaintiff is not subject to the tax provided for under the ordinance and enjoins defendants from collecting any such tax from plaintiff. Moreover, it is clear that the nature of plaintiff's receipts has some bearing upon whether, in conducting the business by which he receives them, he is doing an insurance business for National.

█ Defendants point out (heretofore mentioned) that the receipt given by the plaintiff-agent to the one obtaining the

bail bond, mentions only the 1 per cent received by National as the premium, and the rest is for services in arranging for the bond. Also he bears the burden of his expenses in conducting the business and may charge for the bond such percentage as he desires not exceeding 10 per cent. We hold, however, that that does not necessarily establish him as an independent contractor rather than National's agent. We believe also that there is no escape from the conclusion that the full sum received by him from the one desiring the bail bond is the gross premium for the bond. National may act only through agents and plaintiff is its agent. All the business transacted by plaintiff is agency business, the end objective and result of which is to find takers of bail bonds and to furnish bail bonds to applicants therefor, and the amount charged the applicant for a bond is the premium on that bond. It is not significant how National, Associated and plaintiff choose to allocate that amount, such as for various services, premiums, etc. That is nothing more than an intramural arrangement for their convenience. The fact remains that whatever plaintiff receives from the customer or client for a bond, he is authorized to obtain it, and does so as agent of National. The question should not turn on whether the amount charged for the bond is broken down to specific items for their convenience. The situation should be the same as where National paid plaintiff's expenses incurred in writing bonds, because those expenses would be reflected in the gross premium paid—the amount charged the applicant for a bond. Nor is it persuasive that plaintiff-agent does not pay all of the 10 per cent he receives to Associated or National. There is little difference whether he uses it to defray the expenses of conducting the bail bond business and pay himself a commission or whether all of it is paid to National which in turn pays him a commission and meets the expenses. The essence of the matter is that the amount paid by the insured for the bond is the premium and it has been so recognized by the courts. (See *Bankers Life Co.* v. *Richardson,* 192 Cal. 113 [218 P. 586]; *Western T. Acc. Assn.* v. *Johnson,* 14 Cal.App.2d 306 [58 P.2d 206]; *Mutual Benefit L. Ins. Co.* v. *Richardson,* 192 Cal. 369 [219 P. 1003]; *Industrial Indem. Exch.* v. *State Board of Equalization,* 26 Cal.2d 772 [161 P.2d 222]; *State Farm etc. Ins. Co.* v. *Carpenter,* 31 Cal.App.2d 178 [87 P.2d 867].) And a mere bookkeeping method cannot thwart the law. (*Industrial Indem. Exch.* v. *State Board of Equalization, supra,* 26 Cal.2d 772.) Defendants seem to think that *State*

*Farm. Etc. Ins. Co.* v. *Carpenter, supra,* 31 Cal.App.2d 178, holding that a membership fee to become a member of an insurance organization is not a part of the premium, and *Mutual Benefit L. Ins. Co.* v. *Richardson, supra,* 192 Cal. 369, holding that the amount of the premium stated in the policy above the cost thereof and declared as a dividend to the insured, was not premium, are opposed to the views here expressed, but those holdings on the facts are not contrary to the principle here stated, because the sums paid were not what was actually given by the insured for his insurance. In the first case above cited the membership fee did not entitle the payor to insurance. It only authorized him to apply for insurance and pay the premium. In the second, the amount paid back to the insured as a dividend meant the premium was that much less. In both the basic theory is that the amount paid by the insured for the insurance is the premium. Here, as the bail agent is the insurer's agent, what ·he receives from the applicant for the insurance—that is, what the applicant pays for the bail bond is the premium. What the agent receives, in legal effect the insurer receives. The so-called ''fees'' received by the bail agent do not result in a reduction of the cost to the insured.

█ In various aspects the contention is made that administrative construction requires the conclusion that the 9 per cent retained by the agent is not premium. It is pointed out that the state has collected a tax on only the 1 per cent received by National. That is all its books would show, and a. neglect to collect the tax because of failure to look beyond those books is hardly a compelling construction that the 1 per cent was the only premium. █ Moreover, it must be remembered, concerning this question of administrative construction, that where it is erroneous it is not binding on the court. (*California Drive-In Restaurant Assn.* v. *Clark,* 22 Cal.2d 287 [140 P.2d 657, 147 A.L.R. 1028]; *Bodinson Mfg. Co.* v. *California Emp. Com.,* 17 Cal.2d 321 [109 P.2d 935].)

It is urged that if the bail bond is cancelled the insurer (National) is liable for a return of only 1 per cent stated as premium on the face of the bond (citing Insurance Code, §§ 480-483) and hence the 1 per cent is the only premium. Those sections deal, however, with the requirement that premiums be returned, whatever they be rather than what constitutes premiums, and are thus of no assistance. Moreover, the general agent, and plaintiff testified that the whole amount

received from the applicant for the bond was returned upon cancellation, indicating that such amount was the premium.

Point is made of the requirement that every policy must set forth therein the premium (Ins. Code, § 381(f)) and the commissioner's rules require separation of "premium" and fees in the bail agent's record. This, it is claimed, shows the fees (9 per cent) were not part of the premium and the state so recognized it. That is not significant because there may be other reasons why the agent should not make a "breakdown" of the charge to a bail bond applicant for a bond, but, as seen, the full amount paid is the gross premium which is known by the bail bond applicant.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

SCHAUER, J.—I dissent. Under the majority opinion herein, as under the opinion in *Hughes* v. *Los Angeles* (1914), 168 Cal. 764, 765 [145 P. 94], there are classes of business— those of local insurance agent and of bail bondsman—in which persons may engage without being subject to local license taxation. The express ground of decision of the Hughes case is that "in a direct and immediate sense a tax upon such agents [general and local insurance agents] for the right to do business is a tax upon the corporation's right to do business" (p. 765 of 168 Cal.). But the theory of the Hughes case and this case cannot be logically limited to freeing local agents from local license taxes. The provision of the California Constitution (art. XIII, § 14 4/5) which imposes the state "in lieu" tax upon insurance companies does so "in lieu of *all* other taxes and licenses, state, county, and municipal, upon such insurers and their property, except [(1) taxes on their real estate; (2) taxes with respect to a trust department operated by a title insurer; (3) as to foreign insurers doing business in this state, reciprocal taxes in accord with those imposed by the foreign state on California insurers doing business there; (4) the tax on ocean marine insurance]." (Italics added.)

If the Hughes case is to be given consistent application then a state tax upon an insurance agent's income derived from his insurance business is as invalid as a local license tax on the right to carry on such business. In *Edward Brown & Sons* v. *McColgan* (1942), 53 Cal.App.2d 504, 506-508 [128 P.2d

186], the District Court of Appeal was confronted with such a problem. There a corporate insurance agent contended that because of the Hughes decision it need not pay its franchise (state income) tax. This contention was rejected. The appellate court attempted to distinguish the Hughes case on the ground that the Hughes license tax was upon the privilege of transacting insurance business and impinged directly on the insurance company, whereas the franchise tax was upon the corporate agent's privilege of being a corporation.

The majority opinion in the present case recognizes the difficulty of drawing such a distinction and says (p. 756, *supra*), ''the soundness of the last cited case may be questionable.'' But, the majority opinion goes on to say, ''it may be distinguished on the ground that, although the franchise tax is computed on the net income of the corporation, it is on the privilege of using the corporate mechanism to do business and hence has no relation to the nature of the business conducted. Thus the tax is not on the insurance business within the meaning of the Constitution.'' The purported distinction made by the majority would have no application to a state income tax on an individual insurance agent.

I would, therefore, conclude that the Hughes decision is unsound and should be overruled. It is my further opinion that, even without overruling that case, the validity of Los Angeles Ordinance No. 77,000, as amended by Ordinance No. 92,414, could be upheld. If this latter conclusion were reached then, as will hereinafter appear, Groves would not be subject to the license tax because of the terms of the ordinance itself, rather than because of a strained application of section 14 4/5 of article XIII of the state Constitution. The ordinance provides that ''The term 'gross receipts' as used herein shall not include any insurance premiums received on behalf of any insurance company qualified to do business in the State of California, nor any commissions paid out of such premiums.'' This provision appears to be designed to avoid any litigation such as that in the Hughes (1914) and Edward Brown (1942) cases, *supra*, by expressly excluding from the ''gross receipts'' which are the measure of the tax the entire amount collected by a bail bondsman as payment for a bail bond. It thus appears that while Los Angeles could have taxed the amount received by the bail bondsman as payment for his services (rather than as premium to the insurance company) it did not choose to do so.

The judgment of the trial court does not recognize that it is because of the terms of the ordinance itself that certain taxes cannot be imposed on Groves; rather, it perpetually enjoins defendants from collecting any taxes from Groves under such ordinance. Since Groves may become liable for taxes other than those here discussed, I would reverse the judgment.

Appellants' petition for a rehearing was denied May 21, 1953. Schauer, J., and Spence, J., were of the opinion that the petition should be granted.