[Civ. No. 33096. First Dist., Div. 1. Dec. 23, 1974.]

CALIFORNIA STATE AUTOMOBILE ASSOCIATION,

INTER-INSURANCE BUREAU, Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION et al., Defendants and Respondents.

**COUNSEL**

Hutchins, Staiger & Preston and Frank E. Preston for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Timothy G. Laddish, Deputy Attorney General, for Defendants and Respondents.

OPINION

**MOLINARI, P. J.**—The California State Automobile Association, Inter-Insurance Bureau (hereinafter "the Bureau") claimed deductions in its 1964 California gross premium tax return for amounts credited as savings to the accounts of their subscribers (policy holders) whose insurance policies did not expire until 1965. In previous years the Bureau had claimed such deduction for the year in which the policy expired. The State Board of Equalization (hereinafter the "Board") disallowed the deductions in the 1964 tax return attributable to policies expiring in 1965 but allowed them as deductions in the tax return for the year 1965. The Bureau paid the deficiency assessment resulting from said disallowance under protest and then filed the instant action to recover the amount thereof with interest. After the trial judgment was entered that the Bureau take nothing. The Bureau appeals from said judgment.

The Bureau is a reciprocal interinsurance exchange organized under and existing by virtue of the laws of the State of California. Its business is conducted pursuant to the provisions of division 1, part 2, chapter 3 (§§ 1280 to 1540, inclusive) of the Insurance Code relating to reciprocal insurers. During the period here involved subdivision (f) of section 6 of the Bureau's rules and regulations provided for a reserve fund maintained by debiting each subscriber (policyholder) a sum based on a percentage of his annual premium deposit which fund could be applied to losses and/or expenses and, when expedient and justified by the Bureau's financial condition, to the payment of savings to subscribers upon expiration of their policies pursuant to a uniform percentage of their annual premium deposits.[1] The savings paid to the policyholders pursuant to said rule are referred to as "dividends."

The dividends are declared by the executive committee of the Bureau

---

[1]The said rule in its entirety reads as follows: "(f) For the protection of the subscribers, a Reserve Fund shall be maintained equal in the aggregate to the amount to be determined by the Insurance Board. Said Reserve Fund may be maintained by debiting each subscriber, at any time designated by the Executive Committee, with a sum based on a percentage of his annual premium deposit; such percentage to be determined by the Executive Committee and to be uniform in respect of the several subscribers. The Reserve Fund so maintained, including any amounts credited thereto from any other source, shall not be expended or appropriated, in whole or in part, for any other purpose than the purposes herein specified, to-wit: In the discretion of the Executive Committee said Reserve Fund may be applied to the payment of losses and/or expenses and, when expedient and justified by the Bureau's financial condition, to the payment of savings to subscribers upon expiration of their policies; provided that the amount of any savings so paid to such subscribers in any one month shall be based on a uniform percentage of their annual premium deposits."

90 days in advance of the policy expiration dates. The purpose of declaring a dividend three months before the expiration of a policy is to allow the computer sufficient time to compute the individual dividends and to disseminate the information to all of the Bureau's district offices. The dividends, when declared, are immediately set up as a liability on the books of the Bureau and are credited to the individual subscriber's account in the same month in which the dividend is declared.

The sales representatives are advised of the dividends credited to the subscribers and when they solicit renewals the subscriber is advised of the dividend and that it can be credited to the premium for the ensuing year in which case the premium on renewal is reduced by the amount of the dividend. The subscriber is not advised of the dividend until he receives the renewal memorandum but he will be advised orally of the amount of the dividend credited to his account upon inquiry. A subscriber gets the dividend credit on the renewal of his policy and if he does not renew a check for the dividend is mailed to him. If a policy is cancelled before the expiration date and after the declaration of a dividend the subscriber receives either a return of the premium or the dividend, whichever is greater.

A 15 percent dividend was declared for the Bureau's Group A subscribers on October 2, 1964, whose policies expired in January 1965; on November 6, 1964, for such subscribers whose policies expired in February 1965; and on December 4, 1964, for such subscribers whose policies expired in March 1965. All such dividends were paid or credited from the reserve fund.

The amount at issue in this action concerns only the deductions claimed by the Bureau for its Group A subscribers declared in the last three months of 1964 for policies with expiration dates in the first three months of 1965 and only to the extent that these dividends remained on the Bureau's books on December 31, 1964, as declared and unpaid.

The tax involved is imposed by section 14-4/5 of article XIII of the California Constitution. Subdivision (a) expressly makes the provision applicable to reciprocal or interinsurance exchanges of the Bureau's type. Subdivision (b) reads, "An annual tax is hereby imposed on each insurer doing business in this state on the base, at the rates, and subject to the deductions from the tax hereinafter specified." Subdivision (c) provides in pertinent part, "In the case of an insurer not transacting title

insurance in this state, the 'basis of the annual tax' is, in respect to each year, the amount of gross premiums, less return premiums, received in such year by such insurer upon its business done in this state, other than premiums received for reinsurance and for ocean marine insurance. . . ."

In implementation of the constitutional provision the Legislature enacted section 12221 of the Revenue and Taxation Code which, in pertinent part, provides that "Gross premiums of reciprocal or interinsurance exchanges shall be determined as provided in Section 1530 of the Insurance Code."[2] Section 1530, in pertinent part, provides: ". . . For the purposes of Section 12221 of the Revenue and Taxation Code, the term gross premiums, as applied to reciprocal or interinsurance exchanges, includes all sums paid by subscribers in this State by reason of the insurance exchange, . . . after deducting therefrom premium deposit returns or cancellations, *and all amounts returned to subscribers or credited to their accounts as savings, . . .*" (Italics added.)

The Bureau contends that the phrase "credited to their accounts as savings" means the point in time when the Bureau credits a saving to a subscriber on its books. The Board, in turn, asserts that the phrase has reference to the election by a subscriber to apply his savings dividends to the amount due for his renewal premium. The Board contends, further, that the word "credited" is alternative to and coequal with the word "returned."

In *Ind. Indem. Exch.* v. *State Bd. of Equalization,* 26 Cal.2d 772, 776 [161 P.2d 222], the Supreme Court differentiated the words "credited" and "returned." It was there observed that the word "returned" has reference to actual payment of the savings referred to in section 1530 while the word "credited" has reference to the setting aside of the savings for the subscribers so that there would be no further claims against it. (At p. 776.)

The trial court made findings of fact based on stipulated facts and evidence adduced at the trial. It found in part as follows:

"3. Until the expiration of these policies, the amounts declared as savings dividends for these policies could have been utilized for other purposes by plaintiff.

---

[2]Unless otherwise indicated all statutory references are to the Insurance Code.

"4. The subscribers holding these policies did not have a vested right in any amounts declared as savings dividends until the expiration of the policies involved.

"5. The savings dividends for some of these policies did cease to exist prior to expiration of the policies, and the declared amounts were returned to a reserve fund where they were subject to payment for losses and expenses."

From its findings of fact the trial court concluded:

"1. A savings dividend declared by a California reciprocal insurer cannot be 'credited' to a subscriber's account as savings under section 1530 of the California Insurance Code until the expiration of that subscriber's policy.

"2. A California reciprocal insurer cannot properly claim a savings dividend deduction under section 1530 of the California Insurance Code until the expiration of the policies involved."

Based upon these findings of fact and conclusions of law the trial court ordered judgment that the Bureau take nothing on its complaint. We have concluded that the findings and conclusions are sustained by the facts and the law.

It is apparent from the findings and conclusions that the trial court determined that the Bureau was not entitled to the claimed deduction both under the factual situation presented in the instant case and as a matter of law.

In the factual context of the present case we first note that subdivision (f) of section 6 of the Bureau's rules and regulations does not create a right to the savings in its subscribers until the "expiration of their policies." We also observe that at the trial it was stipulated that for the period herein involved the amount of the premium deposit at any time standing to each subscriber's credit was applicable at all times to the discharge of such subscriber's liability for losses and expenses. We note, too, that while there was testimony that the savings dividends, when declared, were immediately set up on the books of the Bureau and are credited to the individual subscriber's account in the same month in which the dividend is declared and that no dividend, once declared, has

ever been reduced, the evidence adduced was such as to warrant the inference that such savings dividends, although credited to the subscribers' accounts, could still be subjected to a discharge of the subscribers' liability for losses and expenses if it became necessary to do so. Thus, there was testimony that on one occasion the dividend was increased from 15 percent to 20 percent because the loss experience and expenses incurred warranted such an increase. Richard V. Patton, the Bureau's vice-president and general manager, testified that it was "inconceivable" that once declared a savings dividend would be reduced. This opinion was based on his experience with the Bureau and "on its financial status over the years." This testimony acknowledged indirectly that the savings "credited" by way of computation of an anticipated dividend were subject to the payment of losses and expenses.

Patton also acknowledged that where a policy was cancelled and the amount of the return premium exceeded that of the declared savings dividend the dividend was not paid but only the return premium was paid to the subscriber. Bernard Varney, the Bureau's assistant vice-president, testified also that under those circumstances the savings dividend ceased to exist. He stated that under such circumstances the liability account would be reduced, that the dividend entry appearing as a credit on the subscriber's account would be eliminated, and that the surplus would be increased. The surplus referred to is the reserve fund designated in subdivision (f) of section 6 of the Bureau's rules and regulations that can be applied to the payment of losses and expenses.

In view of the foregoing evidence an inference could be drawn that a savings dividend once declared was not irrevocable but could still be applied prior to the expiration of the subscriber's policy to losses and expenses. Such evidence was of sufficient substantiality to support the findings of fact. Accordingly, our power as an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact. (*Foreman & Clark Corp.* v. *Fallon,* 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Florez* v. *Groom Development Co.,* 53 Cal.2d 347, 354 [1 Cal.Rptr. 840, 348 P.2d 200]; *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183].)

▪ The trial court was also justified in concluding, as a matter of law, that a savings dividend declared by a California reciprocal carrier cannot be "credited" to a subscriber's account as savings under section 1530

until the expiration of a subscriber's policy. This conclusion is correct because section 1530 must be read with sections 750, 763, 1420 and 1490. Section 750 provides that any rebate of the premiums offered or paid as an inducement to insurance is an unlawful rebate. Subdivision (a) of section 763 provides, however, that it is not an unlawful rebate for an insurer issuing policies on a participating plan to return any portion of the premium as a dividend after the expiration of the term covered by such policy. (See *Contractor's etc. Assn.* v. *Cal. Comp. Ins. Co.,* 48 Cal.2d 71, 74 [307 P.2d 626].)[3] Section 1490 provides: "It is unlawful for any reciprocal or interinsurance exchange, its attorney, agent or broker, directly or indirectly, to give or offer to a subscriber, an allowance, gift, setoff or payment as an inducement to secure an exchange of indemnities, except in the case of savings or credits to be returned to a subscriber in accordance with the power of attorney or reciprocal or interinsurance contract of the subscriber." Section 1420 provides: "Savings or credits may be returned to the subscribers irrespective of the source from which such savings or credits accrue whenever such returns do not constitute an impairment of the assets or reserves required to be maintained."

It is apparent from a reading of the foregoing statutes that the Legislature contemplated that a savings dividend may not be returned or credited to a subscriber's account until after the expiration of the term covered by the policy. We apprehend that the return of any portion of the premium as a dividend prior to the expiration of the policy period is an unlawful rebate since it may be deemed to be an inducement to a renewal of the policy and hence an inducement to insurance. Insofar as section 1490 is concerned the plain meaning of that statute, when considered in conjunction with subdivision (a) of section 763, is that by power of attorney, reciprocal contract or interinsurance contract it may be provided that savings dividends will be returned or credited to the subscriber after the expiration of the policy period and that any return or payment made pursuant to such provision shall not constitute a rebate. We observe that the provision embodied in the Bureau's rule hereinabove set forth is in line with these statutes, i.e., it provides that savings shall be paid to the subscribers "upon expiration of their policies."

The provisions of section 1420 are significant. This statute provides that savings may be returned to the subscriber "whenever such returns do not constitute an impairment of the assets or reserves required to be maintained." Accordingly, a return of savings cannot be made at the

---

[3]Sections 750 and 763 are made applicable to reciprocal insurers by section 1281.

time the insurer is legally authorized to make such a return until it is ascertained whether the return of savings will constitute an impairment of the assets or reserves of the insurer. If the return of savings would result in such impairment no return of savings can be made. It should be here noted that the Bureau's rule conformed to the provisions of this statute by providing that the reserve fund which consisted of a percentage of the subscribers' deposit premiums "may be applied to the payment of losses and/or expenses and, when expedient and justified by the Bureau's financial condition, to the payment of savings to subscribers upon expiration of their policies; . . ."

It is apparent that it was the legislative intent to give the insurer the right under section 1420 to withhold the declaration of savings dividends until the expiration of the policy in order to protect the assets and reserves of the insurer, and to give the insurer the right, in fulfillment of this purpose, to reduce or cancel dividends declared prior to the expiration of the policy. Section 1420 must be read in conjunction with sections 750 and 763. Under the latter statutes a return of savings dividends cannot be made until the expiration of the policy. The determination contemplated under section 1420 cannot be made until the insurer is empowered to return the savings dividends. Accordingly, no binding determination with respect to the return of dividends can be made until the policy has expired.

We are not unmindful that sections 763 and 1490 make specific reference to the "return" of savings and not to the "crediting" of such savings. As we have already noted, "return" refers to actual payment while "crediting" refers to the setting aside for the subscriber the amount of such savings in a manner that there will be no further claims against it for losses and expenses. We think that for purposes of these statutes there is no distinction between a "return" and a "credit" of the savings. The credit of the savings amounts to a postponement of the time of payment. To permit a differentiation would result in rendering the rebate statutes ineffective since their purport could be obviated by the device of crediting "the dividends" to the account of the subscriber. Accordingly, savings dividends may not be "credited" under section 1530 until the expiration of the policy.

In sum, since the computed dividend cannot be paid or be otherwise irrevocably set aside for the use of the subscriber until the expiration of the policy period, the insurer cannot by the procedure of declaring or

computing a dividend secure a deduction under section 1530 as of the year in which such declaration or computation is made unless such declaration or computation occurs in the year in which the policy expired and after the term covered by such policy. As noted in *Ind. Indem. Exch.,* *supra,* a mere bookkeeping procedure or method may not be utilized to thwart the intent of the Legislature. (26 Cal.2d at p. 778; see *Groves* v. *City of Los Angeles,* 40 Cal.2d 751, 760 [256 P.2d 309].)

The judgment is affirmed.

Sims, J., and Brown (H.C.), J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.